IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **First American Title Insurance Company,** ) | |
|                                **Plaintiff** ) | |
| ) | |
| **v.** ) | Case No. 10-1273-MLB-KGG |
| ) | |
| **Jerry McGonigle and Georgia McGonigle,** ) | |
| **Danny M. Rich and Mary Beth Rich, and** ) | |
| **The City of Hutchinson, Kansas,** ) | |
|                               **Defendants** ) | |
| _____ ) | |

**Pursuant to Chapter 60, K.S.A.**

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the plaintiff, First American Title Insurance Company (the "Company") and for its cause of action against the above-named defendants alleges and states as follows:

1. Plaintiff is a California corporation authorized to do business in the state of Kansas.

2. Defendants Jerry McGonigle and Georgia McGonigle (the "McGonigles") are husband and wife who are residents of Reno County, Kansas and may be served with process at 3900 Lakeview Road, Hutchinson, Kansas 67502.

3. Defendants Danny M. Rich and Mary Beth Rich (the "Riches") are husband and wife who are residents of Reno County, Kansas, and may be served with process at 3620 E. 30th Ave., Hutchinson, KS 67502.

4. Defendant City of Hutchinson is a Kansas municipality which may be served with process by serving the Hutchinson, Kansas Mayor, Cindy Proett, or the Hutchinson City Clerk at 125 East Avenue B, Hutchinson, Kansas 67501.

5. This is a civil action where the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000. This court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a). Plaintiff is seeking a declaratory judgment pursuant to 11 U.S.C. § 2201 as to the extent of its rights and duties under a title insurance policy it issued.

6. In August, 2008, the McGonigles, as Buyers, entered into a contract to purchase that real estate commonly described as 3900 N. Lakeview Road, Hutchinson, Kansas (the "Property") from the Riches, as Sellers. A copy of the contract is identified as Exhibit1, attached hereto, and is referred to herein as the "Real Estate Purchase Contract."

7. The Rich-McGonigle Real Estate Purchase Contract closing occurred on October 9, 2008.

8. The Rich-McGonigle Warranty Deed was recorded October 30, 2008 in Book 601, Page 399 in the office of the Register of Deeds of Reno County, Kansas. A copy of said Warranty Deed is identified as Exhibit 6 attached hereto.

9. The Company issued First American Title Insurance Policy No. OPK 1015275 effective October 30, 2008 at 10:30 a.m (the "Title Policy"). A copy of the Title Policy is identified as Exhibit 7 attached hereto.

10. The Title Policy excepted from coverage the following items, among others:

Public Improvement Easement for public drainage in favor of The City of Hutchinson recorded February 10, 1981 in Book 186 on Page 355 of the Reno County Records

Grant of Easement recorded June 24, 1993 at Page 354 of the Reno County records.

11. The Title Policy did not except from coverage an Agreement dated January 27, 1981 between the City of Hutchinson and June Rich, Dan Rich, and Kathy Rich (the "Agreement") pertaining to the "Panorama Dam" located on the Property. At copy of the Agreement is identified as Exhibit E attached hereto. This "Agreement" states in paragraph 10 that "it shall entirely supercede a prior agreement between such parties dated November 1, 1977, and said prior agreement shall be of no further force or effect as to the parties hereto." The Agreement dated January 27, 1981 was identified as Exhibit E in a demand letter dated December 10, 2009, from the McGonigles' attorney, Edward L. Robinson, a copy of which identified as Exhibit 14 attached hereto (the "Original Demand Letter").

12. The Agreement dated January 27, 1981 (Ex. E) provides in part:

Rich was to remove all trees less than 6 inches in diameter from the dam and their root systems within one year. (Par. 2.a.)

Rich was to remove all trees greater than 6 inches in diameter from the dam and poison their stumps within one year. (Par. 2.b.)

**Rich shall perform such maintenance or repairs as are necessary to keep those elements of Street Improvement Project No. 4-80...in a condition substantially similar to that existing when construction of such project is completed. The City shall be entitled to enter upon such land for the purpose of inspecting such improvements. In the event that such inspection reveals a deterioration in such improvements to the extent that they no longer conform to the completed condition as depicted on the construction drawings for said project, the City shall give notice by certified mail, return receipt requested, to Rich, setting forth the maintenance and/or repairs deemed necessary and requesting that such maintenance and/or repairs be completed within forty-five days. In the event that said maintenance and/or repairs are not made within such forty-five day period and the City has not granted an extension of such period, the City shall have the right to perform such maintenance and/or repairs and collect the cost thereof from Rich. This Agreement shall run with the real property now owned by Rich.** (Par. 6)

**Rich shall be responsible for maintenance of all of Panorama Dam** including the improved portion and related structures, and for the engineering, design and construction of the original portion of Panorama Dam. (Par. 7)

This Agreement shall inure to and be binding upon the parties hereto, their heirs, administrators, executors, successors and assigns. (Par. 9)

This Agreement shall entirely supercede a prior agreement between the parties dated November 1, 1977. (Par. 10)

13. A State of Kansas Division of Water Resources (DWR) Dam Safety Inspection Report dated October 14, 1997, a copy of which is identified as Exhibit 8 attached hereto provides in pertinent part:

This dam was originally permitted on May 23, 1979. No previous inspection of the dam has been conducted. (§ C.2.)

The principal spillway is not functioning. The pipe appears to be obstructed. (§ E.1)

Many large trees were observed on the embankment. (§ E.2.)

> The grass slope protection on the upstream slope has been damaged by weathering and wave erosion. Repair is necessary for proper function of the dam. (§ E.3)
>
> A depression was observed on the crest near the principal spillway. The depression appeared to be a wheel rut. (§ E.4)
>
> Due to residences located directly west of the dam and others located downstream, the hazzard classification of the dam has been changed from "low" to "high." "This hazard classification does not indicate the likelihood of a dam failure. It refers to the potential for loss of life and/or significant property damage in the unlikely event of dam failure." (§ F.)
>
> "**The dam is considered to be hyrdologically adequate.**" (§ H.2.)(Emphasis added.)

14. A DWR "Dam Safety Field Inspection Checklist" for Panorama Lake dated 7/30/97 is identified as Exhibit 9 attached hereto. Handwritten notes on the second page of this Checklist state:

> "Depression on crest of dam above principal spillway pipe. The depression does not appear to be active at this time."

Photographs taken in 1997 provided with this report showing the numerous trees on the dam and the condition of the spillway are substantially similar to the photographs taken of the dam in the presence of defendant Jerry McGonigle on January 21, 2010. Representative photographs taken of the Panorama Dam on January 21, 2010 are identified as Exhibits 15 through 26 attached hereto.

15. By letter dated September 13, 1999, the Kansas Division of Water Resources sent a letter to Dan and Kathy Rich and June Rich requiring them to remove trees, repair the spillway, repair the upstream slope, among other things. A proposed Consent Order was enclosed with a warning that if an agreement was not reached with the state, the state would issue an involuntary order and may seek enforcement of the order through the courts. Copies of this letter and the proposed consent order are identified as Exhibit 10 attached hereto. Plaintiff has not been provided with any filed consent order or involuntary order or of any court orders regarding this matter if any such orders exist.

16. By letter dated February 13, 2009, Brian J. Clennan, Director of Engineering for the City of Hutchinson, sent Jerry McGonigle a letter memorializing a meeting which took place on January 8, 2009 at Panorama Lake. (A copy of this letter which was provided to plaintiff and apparently redacted by the McGonigles' counsel, Edward Robinson, is identified as Exhibit 11 attached hereto. This letter states in pertinent part that:

> A meeting was held on January 8, 2009 at Panorama Lake. In attendance were: Jerry McGonigle, owner of Panorama Lake; Brian Clennan, Director of Engineering for the City of Hutchinson; Jeff Peterson, Senior Civil Engineer for the City of Hutchinson; Kim Feldcamp, Water Structures Engineer for the state of Kansas, Division of Water Resources (DWR).
>
> **Panorama Lake is no longer considered a dam according to DWR. In 2002, DWR changed the definition of a dam to impounding a minimum of 50 Acre-feet of water. Panorama Lake Dam impounds 42.6 Acre-feet of water. Therefore, DWR has no enforcement authority concerning this lake.**
>
> DWR "expressed concern" about trees located on the embankment that holds back water.
>
> DWR "suggested" replacing the principal spillway and outlet pipe which appear to be corroded.
>
> DWR "suggested" clearing brush from the emergency spillway.
>
> DWR "suggested" re-vegetating areas of bared ground to help prevent the embankment from eroding.
>
> In 1980, plans were developed for dam improvements. All of the improvements were made except those regarding the removal and cutting of trees.
>
> According to the former owner of Panorama Lake, Dan Rich, "a concern was raised bout how dying roots would impact the dam's stability if trees were removed and cut down, so that work was not completed."
>
> "**Since this is a private lake, the maintenance of the lake is the owner's responsibility.** Also, if the embankment fails, the owner may be liable for damages."
>
> The City of Hutchinson "recommends that the property owner incorporate DWR's suggestions" and contact an Engineer with expertise in dams to get a determination on whether the trees pose a risk to the embankment of Panorama Lake. (Emphasis added)

17. K.S.A. 82a-301(b) provides in part: "As used in K.S.A. 82a-301 et seq...."dam" means any artificial barrier including appurtenant works with the ability to impound water...that has a height of 25 feet or more; or has a height of six feet or greater and also has the capacity to impound 50 or more acre feet." This statute was last amended in 2002. Engineering drawings the McGonigles' counsel, Edward Robinson, provided from DWR show the height of the Panorama Dam is 14.6 feet. A copy of those drawing is identified as Exhibit 12 attached hereto. As such, Panorama Dam is no longer subject to the jurisdiction of DWR and it could not complete any enforcement actions that may have begun in 1999 even if it wanted to.

18. Enclosed with his demand letter of December 10, 2009 (Ex. 14), the McGonigles' attorney provided the Company with an estimate from Max Jantz Excavating, LLC dated December 4, 2009, a copy of which is identified as Exhibit 13 attached hereto, which states in pertinent part:

> After visiting your project in early November [2009], **it is my estimate the construction of a new dam would cost approximately $850,000**. (Emphasis added.

This estimate for constructing a new dam gave no indication as to whether the Panorama Dam is still hyrdologically adequate or what risk, if any, the trees posed to the embankment of Panorama Lake.

19. In his Original Demand Letter to the Company, the McGonigles' attorney concluded by saying:

> The cost to **repair** the dam far exceeds the Amount of Insurance under the Title Policy.... Therefor, the McGonigles hereby make demand for the policy limit under the Title Policy, or $330,000.00. Please be aware that K.S.A. 40-256 applies to this situation, so the McGonigles will be entitled to their attorney's fees in the event the prevail in litigation against the Title Company regarding this insurance coverage. (Emphasis added.)

20. As of January 28, 2010, the City of Hutchinson had made no demand upon the McGonigles to make any repairs to the dam whatsoever.

21. As of January 28, 2010, no administrative or legal proceedings had been initiated against the McGonigles arising out of or related to the "Agreement" of January 27, 1981 identified as Exhibit E.

22. By letter dated January 28, 2010, Martin R. Ufford, counsel for the Company, advised the McGonigles' attorney that the Company was denying this claim. A copy of Mr. Ufford's letter to Mr. Robinson is identified as Exhibit 27 and attached hereto. As part of the legal authorities supporting the denial of this claim, this letter states:

> 78 Am Jur 2d **Waters** § 202 provides in part:
>
> **As a general rule, the proprietor of a dam** which has been lawfully constructed and maintained is not an insurer of the safety thereof, but **is required to exercise ordinary care, in the maintenance and operation of the dam, to avoid injury to others**.
>
> 78 Am Jur 2d **Waters** § 215 provides in part:
>
> **It is everywhere recognized that proper diligence and care must be used in the** construction and **maintenance of a reservoir or dam wherein or whereby waters are stored or impounded**, or of a conduit for the conveyance of water, to the end that it will be sufficient to retain the imprisoned waters, **and if such care is not used the owner thereof will be liable for injuries caused by the escaping waters**.
>
> 20 Am Jur 2d **Covenants, Etc.** § 42 provides in part:
>
> ...**The obligation imposed by a covenant which runs with the land upon a subsequent transfer of the land becomes binding upon the subsequent grantee and renders him liable to suit for breaches which occur during his ownership. Such grantee or assignee is not, however, liable for breaches of covenants that run with the land and which were committed by those who preceded him to the enjoyment of the estate.** Citing, *Conti v. Duve*, 142 Pa. Super 189, 15 A.2d 494 (1940)(The obligation, imposed by a covenant which runs with the land, upon a subsequent conveyance becomes binding upon the grantee and renders him liable to suit for breaches which occur during his ownership but not for breaches committed by those who preceded him as owners of the land.)
>
> In *Richland County* v. *Anderson*, 129 Mont. 559, 291 P. 2d 267 (1955), the jury entered a verdict against the grantee of the owner who caused the dam in question to be constructed. The court found that the evidence was sufficient to show that the dam was not reasonably safe for the storage of water impounded by it, that **when the grantee took possession of the dam and reservoirs she would have known of the dangerous condition and the risk of a break and injury to others if she had had**

**a reasonable inspection made by one skilled in such matters and that, because of her failure to have such an inspection made and to acquaint herself with the danger inherent in the dam reservoir after she came in possession and control, she was guilty of negligence**; or, in other words, that in the exercise of ordinary care, she would have known that the dam and its spillway were negligently constructed and would not have used the dam and reservoir until they had been made secure.

23. The pertinent provisions of the Title Insurance Policy identified as Exhibit 7 relied upon by the Company in denying the McGonigles' claim are as follows:

**COVERED RISKS**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE...FIRST AMERICAN TITLE INSURANCE COMPANY OF KANSAS, a Kansas corporation (the "Company") insures, as of the Date of Policy...against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured, by reason of...

2. Any defect in or lien or encumbrance on the title...

3. Unmarketable Title....

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred of any matter insured against by this policy, but only to the extent provided in the Conditions.

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys fees, or expenses that arise by reason of...

3. Defects, liens, encumbrances, adverse claims, or other matters...

   (c) resulting in no loss or damage to the Insured Claimant.

**CONDITIONS**

5. **DEFENSE AND PROSECUTION OF ACTIONS**

   (a) Upon written request by the Insured, and subject to the options contained in Section 7, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in

>    litigation in which any third party asserts a claim covered by this policy adverse to the Insured...
>
> (b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce any loss or damage to the Insured.
>
> **7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**
>
> In case of a claim under this policy, the Company shall have the following additional options...
>
> (b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant..
>
> **12. PAYMENT OF LOSS**
>
> When liability and the extent of loss or damage have been definitely fixed in accordance with the Conditions, the payment shall be made within 30 days.

24. Mr. Ufford's letter to the McGonigles' attorney concluded that the law and facts recited above supported the denial of the McGonigles' claim for the following reasons:

> Both the February 13, 2009 letter from the City of Hutchinson and the authorities cited above indicate that since this is a private dam and lake, maintenance of the Panorama Dam is the owner's responsibility. This would be the case whether or not the Agreement of January 27, 1981 had been filed of record. As such, any duty to make repairs to the dam would be an independent common law duty for which First American would have no duty to disclose under its Title Policy. Any repairs required by the common law duty to maintain the dam likewise would not be an insurable "loss" under the policy.
>
> Given that: (a) the state of Kansas has stated it has no jurisdiction over the Panorama Dam at this time due to changes in the law which occurred in 2002, more than six years prior to the conveyance of the Property to the McGonigles; and (b) the City of Hutchinson has made no demand upon the McGonigles to make any repairs to the dam whatsoever, much less under the Agreement, the McGonigles have suffered no "loss" and may never suffer a loss.
>
> Since no administrative or legal proceedings have been initiated against the McGonigles arising out of or related to the "Agreement" of January 27, 1981 identified as Exhibit E in your demand letter, the Company has no duty to provide any defense to the McGonigles at this time.

>The McGonigles may well have a claim against the prior owners for failure to maintain the dam properly. However, had the McGonigles exercised ordinary care, they would have had the dam inspected for structural integrity before they bought it. If it turns out the dam has not been properly maintained and as a result of that improper maintenance, the structural integrity of the dam has been compromised, their claim is against the Riches, not First American. Just because the Company may have deeper pockets than the Riches doesn't establish a basis for making a claim against the Company under the Title Policy.

25. The McGonigles did not respond to Mr. Ufford's letter of January 28, 2010 denying their claim for six months.

26. A letter dated July 21, 2010 to the McGonigles, from Brian J. Clennan, Director of Engineering for the City of Hutchinson enclosed three floodplain maps regarding the Panorama Dam; (a) a Panorama Lake Breach Inundation Map; (b) a Floodplain Map with Panorama Lake Dam; and (c) a Floodplain Map without Panorama Lake Dam. These maps purportedly identified 42 potential hazards in the event of a breach of the dam. This letter, a copy of which is identified as Exhibit 28 states in part:

>Based upon the potential hazards identified with the Breach Inundation Map and our inspection of the dam with the Division of Water Resources on January 8, 2009, the City requests that you make the following repairs to the Panorama Lake Dam:
>
>- Replace the principal spillway and outlet pipe.
>- Clear brush from the emergency spillway adjacent to the lake.
>- Repair dam embankment that has been weakened by trees.
>
>A licensed professional engineer should be hired to prepare plans and specifications for the dam rehabilitation and a qualified contractor should be hired to construct the proposed improvements.
>
>Please send us a proposed project schedule for review and approval.

27. By letter dated July 27, 2010, the McGonigles' attorney, Edward Robinson, sent the Company's attorney, Martin Ufford, a letter re-asserting their claim, a copy of which is identified as Exhibit 29 attached hereto. This letter provides in part:

>This letter is in response to yours of January 28, 2010, in which your client denied the McGonigles' claim under the title insurance policy. Based on additional information obtained after receipt of your letter and referenced herein, the

McGonigles re-assert their claim.

In opining that the McGonigles had suffered no loss, Paragraph 15 of your letter (Page 6) stated: "The City of Hutchinson has made no demand upon the McGonigles to make any repairs to the dam whatsoever." Please see the following documents on the enclosed CD:

- Letter form City of Hutchinson to McGonigles, dated July 21, 2010:
- Panorama Lake Breach Inundation Map;
- Floodplain Map with Panorama Lake Dam;
- Floodplain Map without Panorama Lake Dam
- Agreement dated November 1, 1977

As the enclosed documents show, the City of Hutchinson has requested that the McGonigles **repair** Panorama Dam pursuant to the recorded Agreement your client failed to include in the title policy.

The City of Hutchinson has expressed no willingness to pay for any further engineering studies to determine the integrity of Panorama Dam or to pay for any necessary repairs. Therefore, pursuant to the Agreement dated November 1, 1977, the obligation rests on the McGonigles. Out of an abundance of caution, the McGonigles have notified downstream property owners in and near the Breach Inundation Area (see the enclosed maps) in writing, that the integrity of Panorama Dam is uncertain and it is unknown when it will be repaired.

The McGonigles request that First American acknowledge this situation as a loss under the policy. There is no dispute that the Agreement dated November 1, 1977 was a recorded document and was not included in the title policy. Furthermore, there is no serious dispute that the Agreement constitutes a "defect in or lien or encumbrance on the title to the land. Therefore, your client has liability under the title policy.

The McGonigles request that your client release adequate funds for an engineering study to be performed to assess the integrity of the dam, and if repairs are needed, release funs, not to exceed the policy limit, for necessary repairs. If your client is not amenable to this arrangement, the McGonigles will have no choice but to file suit against all involved parties, including your client, and resolve the merits of your client's position in litigation.

If your client elects to proceed with litigation, and should Panorama Dam breach before necessary studies and repairs can be made, please be advised that should any downstream property owner bring a claim against the McGonigles, the McGonigles will assert derivative liability claims against your client for a bad faith failure to acknowledge liability under the title policy an obtain integrity studies and perform repairs as needed prior to said breach.

I will wait until Wednesday, August 4, 2010 to hear from you. (Emphasis added.)

28. On August 10, 2010, Brain J. Clennan, Director of Engineering for the City of Hutchinson, sent a letter to Jerry McGonigle, a copy of which is identified as Exhibit 30 attached hereto. This letter states in pertinent part:

> In our letter dated July 21, 2010, we asked you to provide a schedule for completing the required repairs to Panorama Lake Dam...Please send a schedule to my attention by August 23, 2010 for review and approval.
>
> Also, add to the schedule the completion date for the following interim repairs:
>
> - Pump the water out of the lake.
> - Remove and replace the principal spillway with a riser at the existing sediment elevation. Our intent is for the lake to drain dry after a storm event until final repairs can be made.
> - Remove all existing trees, woody vegetation, root balls and weeds from the dam embankment. Fill and compact voids left by root balls. Regrade embankment to provide constant geometry throughout embankment and level elevations along top of dam and auxiliary spillway. Establish good vegetative cover with suitable grass throughout embankment. The existing trees and brush on the dam make it difficult to see if a burrowing animal has compromised the dam, and also makes it difficult to visually inspect the dam during a storm event.
> - Provide plans and specifications sealed by a registered Professional Engineer in Kansas to the city prior to completing any of these improvements.
>
> The City is currently developing an Emergency Action Plan in the event of a dam failure. Once it is completed, we will send you a copy. As the dam owner, you are responsible for notifying the proper authorities in the event of a breach.

29. Upon information and belief, the City of Hutchinson made no efforts to assure that the McGonigles predecessors in interest to the Agreement of January 28, 1981, the Riches, grubbed and removed the trees from the Panorama Dam within one year of that Agreement as required by Section 2 of that Agreement.

30. Upon information and belief, the City of Hutchinson made no efforts to follow-up on any inspections of the Panorama Dam or make any demands on the owners of the dam to make any improvements during the 27 year period between the time that agreement became effective and when the McGonigles acquired the property containing the dam in 2008.

31. Many of the items the City of Hutchinson is requiring the McGonigles to perform do not fall under the terms "maintenance and repairs" as those terms are commonly used. Further, "reconstructing" a dam, which the McGonigles claim is necessary, do not fall under the terms "maintenance and repairs" as those terms are commonly used.

32. Plaintiff contends that it has no duty to defend or pay the McGonigles' claim because:

A. Both the February 13, 2009 letter from the City of Hutchinson and the authorities cited above indicate that since this is a private dam and lake, maintenance of the Panorama Dam is the owner's responsibility. This would be the case whether or not the Agreement of January 27, 1981 had been filed of record. As such, any duty to make repairs to the dam would be an independent common law duty for which First American would have no duty to disclose under its Title Policy. Any repairs required by the common law duty to maintain the dam likewise would not be an insurable "loss" under the policy.

B. The McGonigles may have no legal responsibility to pay for the "repairs" demanded by the City of Hutchinson because the dam was obviously in a state of disrepair long before they bought the property in 2008. Under the authorities cited above, the Riches may be responsible for making the improvements, and if they do not do so, then the City can make the required "repairs" and look to the Riches, not the McGonigles for reimbursement.

C. The McGonigles failed to exercise reasonable care by apparently failing to have the dam inspected prior to buying it. Under the terms of the Title Insurance Policy, the Policy does not insure against loss or damage that arises by reason of...adverse circumstances affecting the title...that could be ascertained by an inspection of the Land. (Ex. 7, Schedule B, Exceptions from Coverage, Par. 2)

D. The plaintiff has no obligation to pay any loss until "liability and the extent of loss or damage have been definitely fixed" as required under paragraph 12 of the Conditions of the policy. (Ex. 7, Policy Page 3)

E. The City of Hutchinson and the McGonigles may well have a claim against the prior owners (the Riches) for failure to maintain the dam properly. Assuming the dam has not been properly maintained and as a result of that improper maintenance, the structural integrity of the dam has been compromised, the City's and McGonigles' claim is against the Riches, not First American. Just because the Company may have deeper pockets than the Riches doesn't establish a basis for making a claim against the Company under the Title Policy.

F. The City of Hutchinson made no efforts to inspect the Panorama Dam or make any demands on the owners of the dam to make any improvements during the 27 year period between the time that agreement became effective and when the McGonigles acquired the property containing the dam in 2008. As such, the City's own negligence and/or breach of the Agreement has contributed to the state of disrepair and the potential for having the dam entirely rebuilt. The Company should not be required to make payments for damages to the McGonigles caused by the City's negligence or breach of the Agreement.

G. Both the City of Hutchinson and the McGonigles erroneously cite an agreement of November 1, 1977 as setting forth the City's and Owners' responsibilities regarding the Panorama dam. However, the Agreement of January 28, 1981 specifically states that it supercedes in its entirety the November 1, 1977 agreement. The operative provisions of the January 28, 1981 agreement control this dispute, and, for the reasons stated above, this agreement still does not trigger any duty on the part of the Company to honor the claims asserted against it by the McGonigles.

H. The McGonigles may have the right to rescind the purchase contract with the Riches as the result of the Riches' failure to disclose the existence of the Agreement to the McGonigles and thus the purchase could be voided as a result of such fraudulent inducement.

I. In the event the Agreement is determined to have made the land purchased by the McGonigles unmarketable, the McGonigles would have a breach of warranty claim against the Riches which would make the Riches, not the McGonigles, liable for the dam's "repairs" required by the City.

J. The Agreement is ambiguous in that it is unclear as to whether the Riches are still primarily liable for the "repairs and maintenance" costs, and what "repairs and maintenance" costs are properly chargeable against the McGonigles under the Agreement.

K. The 1981 Agreement spells out the Riches' obligation to do grubbing and tree removal in the main document and Attachment 1. Attachment 2 to the Agreement is a resolution whereby the City agrees to make improvements to dam with construction of the dam's spillway and other components, and calls for division of the $501,000 cost of the project to be divided amongst many homeowners. Therefore, the Agreement could be construed to require the Riches to be liable for light maintenance and the City of Hutchinson and surrounding owners liable for heavy major improvements to the dam.

33. If it is determined that plaintiff is required to pay the McGonigles any amount by virtue of the title insurance policy, plaintiff would be entitled to a subrogation claim against the Riches for

that amount.

34. An actual controversy and bona fide dispute exists between the plaintiff and the defendants as to which party or parties is responsible for making the "repairs" required by the city which really amount to reconstructing the dam, and go well beyond what the terms "maintain and repair" commonly mean.

35. The plaintiff is entitled to declaratory relief under the provisions of 11 U.S.C. § 2201 et seq. and requests the court to enter judgment finding that it has no duty to defend or honor the plaintiffs' claims asserted in Mr. Robinson's letters of December 10, 2009 and July 27, 2010 and that it has denied those claims in good faith. In the alternative, plaintiff is entitled to declaratory relief under the provisions of 11 U.S.C. § 2201 et seq. and requests the court to enter judgment finding: (a) what plaintiffs' obligations to the McGonigles are in light of the facts stated above, or as ultimately determined by the Court, and the terms and conditions of the title insurance policy; (b) that plaintiff has no duty to pay the McGonigles for any loss under the policy until the extent of the claim has been definitely fixed, and that since that has not occurred, that no duty to pay the McGonigles anything at this time; (c) if it is determined that plaintiff is required to pay the McGonigles any amount by virtue of the title insurance policy, that plaintiff would be entitled to a subrogation claim against the Riches for that amount; and (d) in any event, plaintiff's exposure to the McGonigles is limited by the face amount of the policy ($330,000) and no basis for any derivative claims against plaintiff would exist for damages to the adjoining landowners even if the dam were to fail while this action is pending.

WHEREFORE, plaintiff prays:

A. For the court to enter judgment finding that plaintiff has no duty to defend or honor the plaintiffs' claims asserted in Mr. Robinson's letters of December 10, 2009 and July 27, 2010 and that it has denied those claims in good faith.

B.  In the alternative, for the court to enter judgment finding: (a) what plaintiffs' obligations to the McGonigles are in light of the facts stated above, or as ultimately determined by the Court, and the terms and conditions of the title insurance policy;  (b) that plaintiff has no duty to pay the McGonigles for any loss under the policy until the extent of the claim has been definitely fixed, and that since that has not occurred, that no duty to pay the McGonigles anything at this time; (c) if it is determined that plaintiff is required to pay the McGonigles any amount by virtue of the title insurance policy, that plaintiff would be entitled to a subrogation claim against the Riches for that amount; and (d) in any event, plaintiff's exposure to the McGonigles is limited by the face amount of the policy ($330,000) and no basis for any derivative claims against plaintiff would exist for damages to the adjoining landowners even if the dam were to fail while this action is pending.

C.  That plaintiff be awarded its costs herein and for such other and further relief that the court deems just and equitable.

> REDMOND & NAZAR, L.L.P.
>
> By: s/ Martin R. Ufford
> Martin R. Ufford, #9361
> 245 N. Waco, Suite 402
> Wichita, Kansas 67202
> (316) 262-8361/ (316) 263-0610 fax
> mufford@redmondnazar.com
> Attorney for Plaintiff