**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JERRY MCGONIGLE, GEORGIA MCGONIGLE, DANNY M. RICH, MARY BETH RICH, and THE CITY OF HUTCHINSON, KANSAS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | Case No. 10-1273-MLB-KGG |
| JERRY MCGONIGLE and GEORGIA MCGONIGLE, | ) ) | |
| | ) | |
| Defendants/ Third-Party Plaintiffs, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ASTLE REALTY, INC., KAREN GILLILAND, and VORAN HOME INSPECTIONS, INC., | ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**ANSWER, COUNTERCLAIM, CROSS-CLAIM AND THIRD-PARTY CLAIM**
**OF DEFENDANTS JERRY MCGONIGLE AND GEORGIA MCGONIGLE**

Defendants Jerry McGonigle and Georgia McGonigle (the McGonigles) through their undersigned counsel respond as follows to the original complaint in this litigation, denying everything not given a specific response.

1.     Plaintiff is a California corporation authorized to do business in the state of Kansas.

**Response:     The McGonigles lack knowledge or information sufficient to form a belief about the truth of these allegations.**

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 2 of 46

2.      Defendants Jerry McGonigle and Georgia McGonigle (the "McGonigles") are husband and wife who are residents of Reno County, Kansas and may be served with process at 3900 Lakeview Road, Hutchinson, Kansas 67502.

**Response:      Admit.**

3.      Defendants Danny M. Rich and Mary Beth Rich (the "Riches") are husband and wife who are residents of Reno County, Kansas, and may be served with process at 3620 E. 30th Ave., Hutchinson, KS 67502.

**Response:      The McGonigles lack knowledge or information sufficient to form a belief about the truth of these allegations.**

4.      Defendant City of Hutchinson is a Kansas municipality which may be served with process by serving the Hutchinson, Kansas Mayor, Cindy Proett, or the Hutchinson City Clerk at 125 East Avenue B, Hutchinson, Kansas 67501.

**Response:      The McGonigles lack knowledge or information sufficient to form a belief about the truth of these allegations.**

5.      This is a civil action where the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000. This court has jurisdiction pursuant to the provisions of 11 U.S.C. § 1332(a). Plaintiff is seeking a declaratory judgment pursuant to 11 U.S.C. § 2201 as to the extent of its rights and duties under a title insurance policy it issued.

**Response:      The first and second sentences are admitted.  The third sentence describes plaintiff's Complaint for Declaratory Judgment, which does not require a response; however, the McGonigles state the present action is not authorized under 11 U.S.C. § 2201.**

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 3 of 46

6.     In August 2008, the McGonigles, as Buyers, entered into a contract to purchase that real estate commonly described as 3900 N. Lakeview Road, Hutchinson, Kansas (the "Property") from the Riches, as Sellers. A copy of the contract is identified as Exhibit 1, attached hereto, and is referred to herein as the "Real Estate Purchase Contract."

**Response:     The first sentence is admitted.  The McGonigles lack knowledge or information sufficient to form a belief about the authenticity of Exhibit 1.**

7.     The Rich-McGonigle Real Estate Purchase Contract closing occurred on October 9, 2008.

**Response:     The McGonigles admit closing occurred October 9, 2008.  They deny the property conveyed at closing was the same property described in the Real Estate Purchase Contract.**

8.     The Rich-McGonigle Warranty Deed was recorded October 30, 2008 in Book 601, Page 399 in the office of the Register of Deeds of Reno County, Kansas. A copy of said Warranty Deed is identified as Exhibit 6 attached hereto.

**Response:     The McGonigles admit a Kansas Warranty Deed was recorded October 30, 2008 in Book 601, Page 399 in the office of the Register of Deeds of Reno County, Kansas.  The McGonigles deny the property conveyed by the Kansas Warranty Deed was the same property described in the Real Estate Purchase Contract.**

9.     The Company issued First American Title Insurance Policy No. OPK 1015275 effective October 30, 2008 at 10:30 a.m. (the "Title Policy"). A copy of the Title Policy is identified as Exhibit 7 attached hereto.

**Response:     Admit.**

10.     The Title Policy excepted from coverage the following items, among others:

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 4 of 46

Public Improvement Easement for public drainage in favor of The City of Hutchinson recorded February10, 1981 in Book 186 on Page 355 of the Reno County Records.

Grant of Easement recorded June 24, 1993 at Page 354 of the Reno County records.

**Response:     Admit.**

11.     The Title Policy did not except from coverage an Agreement dated January 27, 1981 between the City of Hutchinson and June Rich, Dan Rich, and Kathy Rich (the "Agreement") pertaining to the "Panorama Dam" located on the Property. A copy of the Agreement is identified as Exhibit E attached hereto. This "Agreement" states in paragraph 10 that "it shall entirely supersede a prior agreement between such parties dated November 1, 1977, and said prior agreement shall be of no further force or effect as to the parties hereto." The Agreement dated January 27, 1981 was identified as Exhibit E in a demand letter dated December 10, 2009, from the McGonigles' attorney, Edward L. Robinson, a copy of which identified as Exhibit 14 attached hereto (the "Original Demand Letter").

**Response:     This paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

12.     The Agreement dated January 27, 1981 (Ex. E) provides in part:

Rich was to remove all trees less than 6 inches in diameter from the dam and their root systems within one year. (Par. 2.a.)

Rich was to remove all trees greater than 6 inches in diameter from the dam and poison their stumps within one year. (Par. 2.b.)

Rich shall perform such maintenance or repairs as are necessary to keep those elements of Street Improvement Project No. 4-80 . . . in a condition substantially similar to that existing when construction of such project is completed. The City shall be entitled to enter upon such land for the purpose of inspecting such

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 5 of 46

improvements. In the event that such inspection reveals a deterioration in such improvements to the extent that they no longer conform to the completed condition as depicted on the construction drawings for said project, the City shall give notice by certified mail, return receipt requested, to Rich, setting forth the maintenance and/or repairs deemed necessary and requesting that such maintenance and/or repairs be completed within forty-five days. In the event that said maintenance and/or repairs are not made within such forty-five day period and the City has not granted an extension of such period, the City shall have the right to perform such maintenance and/or repairs and collect the cost thereof from Rich. This Agreement shall run with the real property now owned by Rich. (Par. 6)

Rich shall be responsible for maintenance of all of Panorama Dam including the improved portion and related structures, and for the engineering, design and construction of the original portion of Panorama Dam. (Par. 7)

This Agreement shall inure to and be binding upon the parties hereto, their heirs, administrators, executors, successors and assigns. (Par. 9)

This Agreement shall entirely supersede a prior agreement between the parties dated November 1, 1977. (Par. 10)

**Response:    This paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

13.    A State of Kansas Division of Water Resources (DWR) Dam Safety Inspection Report dated October 14, 1997, a copy of which is identified as Exhibit 8 attached hereto provides in pertinent part:

This dam was originally permitted on May 23, 1979. No previous inspection of the dam has been conducted. (§ C.2.)

The principal spillway is not functioning. The pipe appears to be obstructed. (§ E.1)

Many large trees were observed on the embankment. (§ E.2.)

The grass slope protection on the upstream slope has been damaged by weathering and wave erosion. Repair is necessary for proper function of the dam. (§ E.3)

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 6 of 46

> A depression was observed on the crest near the principal spillway. The depression appeared to be a wheel rut. (§ E.4)
>
> Due to residences located directly west of the dam and others located downstream, the hazzard classification of the dam has been changed from "low" to "high." "This hazard classification does not indicate the likelihood of a dam failure. It refers to the potential for loss of life and/or significant property damage in the unlikely event of dam failure." (§ F.)
>
> "The dam is considered to be hydrologically adequate." (§ H.2.)

**Response:     This paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

14.     A DWR "Dam Safety Field Inspection Checklist" for Panorama Lake dated 7/30/97 is identified as Exhibit 9 attached hereto. Handwritten notes on the second page of this Checklist state:

> "Depression on crest of dam above principal spillway pipe. The depression does not appear to be active at this time."

Photographs taken in 1997 provided with this report showing the numerous trees on the dam and the condition of the spillway are substantially similar to the photographs taken of the dam in the presence of defendant Jerry McGonigle on January 21, 2010.  Representative photographs taken of the Panorama Dam on January 21, 2010 are identified as Exhibits 15 through 26 attached hereto.

**Response:     This paragraph characterizes documents and photographs attached to plaintiff's Complaint for Declaratory Judgment, which documents and photographs speak for themselves, and no response is required.**

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 7 of 46

15.     By letter dated September 13, 1999, the Kansas Division of Water Resources sent a letter to Dan and Kathy Rich and June Rich requiring them to remove trees, repair the spillway, repair the upstream slope, among other things. A proposed Consent Order was enclosed with a warning that if an agreement was not reached with the state, the state would issue an involuntary order and may seek enforcement of the order through the courts. Copies of this letter and the proposed consent order are identified as Exhibit 10 attached hereto. Plaintiff has not been provided with any filed consent order or involuntary order or of any court orders regarding this matter if any such orders exist.

**Response:     The McGonigles lack knowledge or information sufficient to form a belief about the truth of the allegations in the first, second, and fourth sentences of this paragraph.     The remainder of this paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

16.     By letter dated February 13, 2009, Brian J. Clennan, Director of Engineering for the City of Hutchinson, sent Jerry McGonigle a letter memorializing a meeting which took place on January 8, 2009 at Panorama Lake. (A copy of this letter which was provided to plaintiff and apparently redacted by the McGonigles' counsel, Edward Robinson, is identified as Exhibit 11 attached hereto.  This letter states in pertinent part that:

> A meeting was held on January 8, 2009 at Panorama Lake. In attendance were: Jerry McGonigle, owner of Panorama Lake; Brian Clennan, Director of Engineering for the City of Hutchinson; Jeff Peterson, Senior Civil Engineer for the City of Hutchinson; Kim Feldcamp, Water Structures Engineer for the state of Kansas, Division of Water Resources (DWR).

> Panorama Lake is no longer considered a dam according to DWR. In 2002, DWR changed the definition of a dam to impounding a minimum of 50 Acre-feet of

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 8 of 46

water. Panorama Lake Dam impounds 42.6 Acre-feet of water. Therefore, DWR
has no enforcement authority concerning this lake.

DWR "expressed concern" about trees located on the embankment that holds
back water.

DWR "suggested" replacing the principal spillway and outlet pipe which appear
to be corroded.

DWR "suggested" clearing brush from the emergency spillway.

DWR "suggested" re-vegetating areas of bared ground to help prevent the
embankment from eroding.

In 1980, plans were developed for dam improvements. All of the improvements
were made except those regarding the removal and cutting of trees.

According to the former owner of Panorama Lake, Dan Rich, "a concern was
raised about how dying roots would impact the dam's stability if trees were
removed and cut down, so that work was not completed."

"Since this is a private lake, the maintenance of the lake is the owner's
responsibility. Also, if the embankment fails, the owner may be liable for
damages."

The City of Hutchinson "recommends that the property owner incorporate DWR's
Suggestions" and contact an Engineer with expertise in dams to get a
determination on whether the trees pose a risk to the embankment of Panorama
Lake.

**Response:     The McGonigles admit the first and second sentences of this
paragraph.    The remainder of this paragraph characterizes documents attached to
plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves,
and no response is required.**

17.     K.S.A. 82a-301(b) provides in part: "As used in K.S.A. 82a-301 et seq. .... "dam"
means any artificial barrier including appurtenant works with the ability to impound water ... that
has a height of 25 feet or more; or has a height of six feet or greater and also has the capacity to
impound 50 or more acre feet." This statute was last amended in 2002. Engineering drawings the

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 9 of 46

McGonigles' counsel, Edward Robinson, provided from DWR show the height of the Panorama Dam is 14.6 feet. A copy of those drawing is identified as Exhibit 12 attached hereto. As such, Panorama Dan is no longer subject to the jurisdiction of DWR and it could not complete any enforcement actions that may have begun in 1999 even if it wanted to.

**Response:       This paragraph describes K.S.A. 82a-301(b) and amendments thereto, which speaks for themselves, and contains plaintiff's legal conclusions, which do not require a response.  The McGonigles admit their attorney provided to the plaintiff the documents identified as Exhibit 12.  The remainder of this paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

18.     Enclosed with his demand letter of December 10, 2009 (Ex. 14), the McGonigles' attorney provided the Company with an estimate from Max Jantz Excavating, LLC dated December 4, 2009, a copy of which is identified as Exhibit 13 attached hereto, which states in pertinent part:

> After visiting your project in early November [2009], it is my estimate the construction of a new dam would cost approximately $850,000.

This estimate for constructing a new dam gave no indication as to whether the Panorama Dam is still hydrologically adequate or what risk, if any, the trees posed to the embankment of Panorama Lake.

**Response:       The first sentence is admitted.  The remainder of this paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 10 of 46

19.     In his Original Demand Letter to the Company, the McGonigles' attorney concluded by saying:

> The cost to repair the dam far exceeds the Amount of Insurance under the Title Policy. . . . Therefore, the McGonigles hereby make demand for the policy limit under the Title Policy, or $330,000.00. Please be aware that K.S.A. 40-256 applies to this situation, so the McGonigles will be entitled to their attorney's fees in the event they prevail in litigation against the Title Company regarding this insurance coverage.

**Response:      This paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

20.     As of January 28, 2010, the City of Hutchinson had made no demand upon the McGonigles to make any repairs to the dam whatsoever.

**Response: Admit.**

21.     As of January 28, 2010, no administrative or legal proceedings had been initiated against the McGonigles arising out of or related to the "Agreement" of January 27, 1981 identified as Exhibit E.

**Response: Admit.**

22.     By letter dated January 28, 2010, Martin R. Ufford, counsel for the Company, advised the McGonigles' attorney that the Company was denying this claim. A copy of Mr. Ufford's letter to Mr. Robinson is identified as Exhibit 27 and attached hereto. As part of the legal authorities supporting the denial of this claim, this letter states:

78 Am Jur 2d Waters § 202 provides in part:

> As a general rule, the proprietor of a dam which has been lawfully constructed and maintained is not an insurer of the safety thereof, but is required to exercise ordinary care, in the maintenance and operation of the dam, to avoid injury to others.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 11 of 46

78 Am Jur 2d Waters § 215 provides in part:

It is everywhere recognized that proper diligence and care must be used in the construction and maintenance of a reservoir or dam wherein or whereby waters are stored or impounded, or of a conduit for the conveyance of water, to the end that it will be sufficient to retain the imprisoned waters, and if such care is not used the owner thereof will be liable for injuries caused by the escaping waters.

20 Am Jur 2d Covenants, Etc. § 42 provides in part:

... The obligation imposed by a covenant which runs with the land upon a subsequent transfer of the land becomes binding upon the subsequent grantee and renders him liable to suit for breaches which occur during his ownership. Such grantee or assignee is not, however, liable for breaches of covenants that run with the land and which were committed by those who preceded him to the enjoyment of the estate. Citing, Conti v. Duve, 142 Pa. Super 189, 15 A.2d 494 (1940) (The obligation, imposed by a covenant which runs with the land, upon a subsequent conveyance becomes binding upon the grantee and renders him liable to suit for breaches which occur during his ownership but not for breaches committed by those who preceded him as owners of the land.)

In *Richland County v. Anderson*, 129 Mont. 559, 291 P. 2d 267 (1955), the jury entered a verdict against the grantee of the owner who caused the dam in question to be constructed. The court found that the evidence was sufficient to show that the dam was not reasonably safe for the storage of water impounded by it, that when the grantee took possession of the dam and reservoirs she would have known of the dangerous condition and the risk of a break and injury to others if she had had a reasonable inspection made by one skilled in such matters and that, because of her failure to have such an inspection made and to acquaint herself with the danger inherent in the dam reservoir after she came in possession and control, she was guilty of negligence; or, in other words, that in the exercise of ordinary care, she would have known that the dam and its spillway were negligently constructed and would not have used the dam and reservoir until they had been made secure.

**Response:     The first sentence of this paragraph is admitted.  The remainder of this paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

23.     The pertinent provisions of the Title Insurance Policy identified as Exhibit 7 relied upon by the Company in denying the McGonigles' claim are as follows:

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 12 of 46

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE ... FIRST AMERICAN TITLE INSURANCE COMPANY OF KANSAS, a Kansas corporation (the "Company") insures, as of the Date of Policy . . . against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured, by reason of . . .

2. Any defect in or lien or encumbrance on the title . . .

3. Unmarketable Title

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred of any matter insured against by this policy, but only to the extent provided in the Conditions.

EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys fees, or expenses that arise by reason of . . .

3.       Defects, liens, encumbrances, adverse claims, or other matters.

         (c)      resulting in no loss or damage to the Insured Claimant.

CONDITIONS

5.       DEFENSE AND PROSECUTION OF ACTIONS

(a)      Upon written request by the Insured, and subject to the options contained in Section 7, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured . . .

(b)      The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 13 of 46

necessary or desirable to establish the Title, as insured, or to prevent or
reduce any loss or damage to the insured.

7.     OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF
LIABILITY

In case of a claim under this policy, the Company shall have the following
additional options . . .

(c)     To Pay or Otherwise Settle With Parties Other Than the Insured or With
        the Insured Claimant . . .

12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in
accordance with the Conditions, the payment shall be made within 30 days.

**Response: This paragraph contains plaintiff's legal conclusions, which do not
require a response.**

24.     Mr. Ufford's letter to the McGonigles' attorney concluded that the law and facts
recited above supported the denial of the McGonigles' claim for the following reasons:

Both the February 13, 2009 letter from the City of Hutchinson and the authorities
cited above indicate that since this is a private dam and lake, maintenance of the
Panorama Dain is the owner's responsibility. This would be the case whether or
not the Agreement of January 27, 1981 had been filed of record. As such, any
duty to make repairs to the dam would he an independent common law duty for
which First American would have no duty to disclose under its Title Policy.  Any
repairs required by the common law duty to maintain the dam likewise would not
be an insurable "loss" under the policy.

Given that: (a) the state of Kansas has stated it has no jurisdiction over the
Panorama Dam at this time due to changes in the law which occurred in 2002,
more than six years prior to the conveyance of the Property to the McGonigles;
and (b) the City of Hutchinson has made no demand upon the McGonigles to
make any repairs to the dam whatsoever, much less under the Agreement, the
McGonigles have suffered no "loss" and may never suffer a loss.

Since no administrative or legal proceedings have been initiated against the
McGonigles arising out of or related to the "Agreement" of January 27, 1981
identified as Exhibit E in your demand letter, the Company has no duty to provide
any defense to the McGonigles at this time.

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 14 of 46

> The McGonigles may well have a claim against the prior owners for failure to maintain the dam properly. However, had the McGonigles exercised ordinary care, they would have had the dam inspected for structural integrity before they bought it. If it turns out the dam has not been properly maintained and as a result of that improper maintenance, the structural integrity of the dam has been compromised, their claim is against the Riches, not First American. Just because the Company may have deeper pockets than the Riches doesn't establish a basis for making a claim against the Company under the Title Policy.

**Response: This paragraph contains plaintiff's legal conclusions and characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

25.     The McGonigles did not respond to Mr. Ufford's letter of January 28, 2010 denying their claim for six months.

**Response: The McGonigles admit on July 27, 2010 they re-issued their written demand to the plaintiff based on additional studies performed by defendant the City of Hutchinson, Kansas.**

26.     A letter dated July 21, 2010 to the McGonigles, from Brian J. Clennan, Director of Engineering for the City of Hutchinson enclosed three floodplain maps regarding the Panorama Dam; (a) a Panorama Lake Breach Inundation Map; (b) a Floodplain Map with Panorama Lake Dam; and (c) a Floodplain Map without Panorama Lake Dam. These maps purportedly identified 42 potential hazards in the event of a breach of the dam. This letter, a copy of which is identified as Exhibit 28 states in part:

> Based upon the potential hazards identified with the Breach Inundation Map and our inspection of the dam with the Division of Water Resources on January 8, 2009, the City requests that you make the following repairs to the Panorama Lake Dam:
>
> - Replace the principal spillway and outlet pipe.
> - Clear brush from the emergency spillway adjacent to the lake.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 15 of 46

- Repair dam embankment that has been weakened by trees.

A licensed professional engineer should be hired to prepare plans and specifications for the dam rehabilitation and a qualified contractor should be hired to construct the proposed improvements.

Please send us a proposed project schedule for review and approval.

**Response:  The first sentence is admitted.  The remainder of this paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

27.   By letter dated July 27, 2010, the McGonigles' attorney, Edward Robinson, sent the Company's attorney, Martin Ufford, a letter re-asserting their claim, a copy of which is identified as Exhibit 29 attached hereto. This letter provides in part:

This letter is in response to yours of January 28, 2010, in which your client denied the McGonigles' claim under the title insurance policy. Based on additional information obtained after receipt of your letter and referenced herein, the McGonigles re-assert their claim.

In opining that the McGonigles had suffered no loss, Paragraph 15 of your letter (Page 6) stated: "The City of Hutchinson has made no demand upon the McGonigles to make any repairs to the dam whatsoever." Please see the following documents on the enclosed CD:

- Letter from City of Hutchinson to McGonigles, dated July 21, 2010:
- Panorama Lake Breach Inundation Map;
- Floodplain Map with Panorama Lake Dam;
- Floodplain Map without Panorama Lake Dam;
- Agreement dated November 1, 1977.

As the enclosed documents show, the City of Hutchinson has requested that the McGonigles repair Panorama Dam pursuant to the recorded Agreement your client failed to include in the title policy.

The City of Hutchinson has expressed no willingness to pay for any further engineering studies to determine the integrity of Panorama Datn or to pay for any necessary repairs. Therefore, pursuant to the Agreement dated November 1, 1977, the obligation rests on the McGonigles. Out of an abundance of caution, the

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 16 of 46

McGonigles have notified downstream property owners in and near the Breach Inundation Area (see the enclosed maps) in writing, that the integrity of Panorama Dam is uncertain and it is unknown when it will be repaired.

The McGonigles request that First American acknowledge this situation as a loss under the policy. There is no dispute that the Agreement dated November 1, 1977 was a recorded document and was not included in the title policy. Furthermore, there is no serious dispute that the Agreement constitutes a defect in or lien or encumbrance on the title to the land. Therefore, your client has liability under the title policy.

The McGonigles request that your client release adequate funds for an engineering study to be performed to assess the integrity of the dam, and if repairs are needed, release funds, not to exceed the policy limit, for necessary repairs. If your client is not amenable to this arrangement, the McGonigles will have no choice but to file suit against all involved parties, including your client, and resolve the merits of your client's position in litigation.

If your client elects to proceed with litigation, and should Panorama Dam breach before necessary studies and repairs can be made, please he advised that should any downstream property owner bring a claim against the McGonigles, the McGonigles will assert derivative liability claims against your client for a had faith failure to acknowledge liability under the title policy an obtain integrity studies and perform repairs as needed prior to said breach.

I will wait until Wednesday, August 4, 2010 to hear from you.

**Response:     The first sentence is admitted.   The remainder of this paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

28.     On August 10, 2010, Brain J. Clennan, Director of Engineering for the City of Hutchinson, sent a letter to Jerry McGonigle, a copy of which is identified as Exhibit 30 attached hereto. This letter states in pertinent part:

In our letter dated July 21, 2010, we asked you to provide a schedule for completing the required repairs to Panorama Lake Dam ... Please send a schedule to my attention by August 23, 2010 for review and approval.

Also, add to the schedule the completion date for the following interim repairs:

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 17 of 46

- Pump the water out of the lake.
- Remove and replace the principal spillway with a riser at the existing sediment elevation. Our intent is for the lake to drain dry after a storm event until final repairs can be made.
- Remove all existing trees, woody vegetation, root balls and weeds from the dam embankment. Fill and compact voids left by root balls. Regrade embankment to provide constant geometry throughout embankment and level elevations along top of dam and auxiliary spillway. Establish good vegetative cover with suitable grass throughout embankment. The existing trees and brush on the dam make it difficult to see if a burrowing animal bas compromised the dam, and also makes it difficult to visually inspect the dam during a storm event.
- Provide plans and specifications sealed by a registered Professional Engineer in Kansas to the city prior to completing any of these improvements.

The City is currently developing an Emergency Action Plan in the event of a dam failure. Once it is completed, we will send you a copy. As the dam owner, you are responsible for notifying the proper authorities in the event of a breach.

**Response:     The McGonigles admit receiving a letter from Brian Clennan dated August 10, 2010, but do not know when the letter was sent.  The remainder of this paragraph characterizes documents attached to plaintiff's Complaint for Declaratory Judgment, which documents speak for themselves, and no response is required.**

29.     Upon information and belief, the City of Hutchinson made no efforts to assure that the McGonigles' predecessors in interest to the Agreement of January 28, 1981, the Riches, grubbed and removed the trees from the Panorama Dam within one year of that Agreement as required by Section 2 of that Agreement.

**Response:     The McGonigles lack knowledge or information sufficient to form a belief about the truth of these allegations.**

30.     Upon information and belief, the City of Hutchinson made no efforts to follow-up on any inspections of the Panorama Dam or make any demands on the owners of the dam to

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 18 of 46

make any improvements during the 27 year period between the time that agreement became effective and when the McGonigles acquired the property containing the dam in 2008.

**Response:      The McGonigles lack knowledge or information sufficient to form a belief about the truth of these allegations.**

31.     Many of the items the City of Hutchinson is requiring the McGonigles to perform do not fall under the terms "maintenance and repairs" as those terms are commonly used. Further, "reconstructing" a dam, which the McGonigles claim is necessary, do not fall under the terms "maintenance and repairs" as those terms are commonly used.

**Response: This paragraph contains plaintiff's legal conclusions, which do not require a response.**

32.     Plaintiff contends that it has no duty to defend or pay the McGonigles' claim because:

A.   Both the February 13, 2009 letter from the City of Hutchinson and the authorities cited above indicate that since this is a private dam and lake, maintenance of the Panorama Dam is the owner's responsibility. This would be the case whether or not the Agreement of January 27, 1981 had been filed of record. As such, any duty to make repairs to the dam would be an independent common law duty for which First American would have no duty to disclose under its Title Policy. Any repairs required by the common law duty to maintain the dam likewise would not be an insurable "loss" under the policy.

B.   The McGonigles may have no legal responsibility to pay for the "repairs" demanded by the City of Hutchinson because the dam was obviously in a state of disrepair long before they bought the property in 2008. Under the authorities cited above, the Riches may be responsible for making the improvements and if they do not do so, then the City can make the required "repairs" and look to the Riches, not the McGonigles for reimbursement.

C.   The McGonigles failed to exercise reasonable care by apparently failing to have the dam inspected prior to buying it. Under the terms of the Title Insurance Policy, the Policy does not insure against loss or damage that arises by reason of . . . adverse circumstances affecting the title . . . that could be ascertained by an inspection of the Land. (Ex. 7, Schedule B, Exceptions from Coverage, Par. 2)

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 19 of 46

D.  The plaintiff has no obligation to pay any loss until "liability and the extent of loss or damage have been definitely fixed" as required under paragraph 12 of the Conditions of the policy. (Ex. 7, Policy Page 3)

E.  The City of Hutchinson and the McGonigles may well have a claim against the prior owners (the Riches) for failure to maintain the dam properly. Assuming the dam has not been properly maintained and as a result of that improper maintenance, the structural integrity of the dam has been compromised, the City's and McGonigles' claim is against the Riches, not First American. Just because the Company may have deeper pockets than the Riches doesn't establish a basis for making a claim against the Company under the Title Policy.

F.  The City of Hutchinson made no efforts to inspect the Panorama Dam or make any demands on the owners of the dam to make any improvements during the 27 year period between the time that agreement became effective and when the McGonigles acquired the property containing the dam in 2008. As such, the City's own negligence and/or breach of the Agreement has contributed to the state of disrepair and the potential for having the dam entirely rebuilt. The Company should not be required to make payments for damages to the McGonigles caused by the City's negligence or breach of the Agreement.

G.  Both the City of Hutchinson and the McGonigles erroneously cite an agreement of November 1, 1977 as setting forth the City's and Owners' responsibilities regarding the Panorama dam. However, the Agreement of January 28, 1981 specifically states that it supersedes in its entirety the November 1, 1977 agreement. The operative provisions of the January 28, 1981 agreement control this dispute, and, for the reasons stated above, this agreement still does not trigger any duty on the part of the Company to honor the claims asserted against it by the McGonigles.

H.  The McGonigles may have the right to rescind the purchase contract with the Riches as the result of the Riches' failure to disclose the existence of the Agreement to the McGonigles and thus the purchase could be voided as a result of such fraudulent inducement.

I.  In the event the Agreement is determined to have made the land purchased by the McGonigles unmarketable, the McGonigles would have a breach of warranty claim against the Riches which would make the Riches, not the McGonigles, liable for the dam's "repairs" required by the City.

J.  The Agreement is ambiguous in that it is unclear as to whether the Riches are still primarily liable for the "repairs and maintenance" costs, and what "repairs and maintenance" costs are properly chargeable against the McGonigles under the Agreement.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 20 of 46

K.  The 1981 Agreement spells out the Riches' obligation to do grubbing and tree removal in the main document and Attachment 1. Attachment 2 to the Agreement is a resolution whereby the City agrees to make improvements to the dam with construction of the dam's spillway and other components, and calls for division of the $501,000 cost of the project to be divided amongst many homeowners. Therefore, the Agreement could be construed to require the Riches to be liable for light maintenance and the City of Hutchinson and surrounding owners liable for heavy major improvements to the dam.

**Response: This paragraph contains plaintiff's legal conclusions, which do not require a response.  The McGonigles deny plaintiff's so-called "deeper pockets" had anything to do with the McGonigles' attempt to resolve this situation without litigation.**

33.     If it is determined that plaintiff is required to pay the McGonigles any amount by virtue of the title insurance policy, plaintiff would be entitled to a subrogation claim against the Riches for that amount.

**Response: This paragraph contains plaintiff's legal conclusions, which do not require a response.**

34.     An actual controversy and bona fide dispute exists between the plaintiff and the defendants as to which party or parties is responsible for making the "repairs" required by the city which really amount to reconstructing the dam, and go well beyond what the terms "maintain and repair" commonly mean.

**Response: The McGonigles admit "An actual controversy and bona fide dispute exists between the plaintiff and the defendants as to which party or parties is responsible for making the "repairs" required by the city".  The remainder of this paragraph contains plaintiff's legal conclusions, which do not require a response.**

35.     The plaintiff is entitled to declaratory relief under the provisions of 11 U.S.C. § 2201 *et seq*. and requests the court to enter judgment finding that it has no duty to defend or

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 21 of 46

honor the plaintiffs' claims asserted in Mr. Robinson's letters of December 10, 2009 and July 27, 2010 and that it has denied those claims in good faith. In the alternative, plaintiff is entitled to declaratory relief under the provisions of 11 U.S.C. § 2201 *et seq.* and requests the court to enter judgment finding: (a) what plaintiffs' obligations to the McGonigles are in light of the facts stated above, or as ultimately determined by the Court, and the terms and conditions of the title insurance policy; (b) that plaintiff has no duty to pay the McGonigles for any loss under the policy until the extent of the claim has been definitely fixed, and that since that has not occurred, that no duty to pay the McGonigles anything at this time; (c) if it is determined that plaintiff is required to pay the McGonigles any amount by virtue of the title insurance policy, that plaintiff would be entitled to a subrogation claim against the Riches for that amount; and (d) in any event, plaintiffs exposure to the McGonigles is limited by the face amount of the policy ($330,000) and no basis for any derivative claims against plaintiff would exist for damages to the adjoining landowners even if the dam were to fail while this action is pending.

**Response: This paragraph contains plaintiff's legal conclusions, which do not require a response; however, the McGonigles deny plaintiff is entitled to declaratory relief under 11 U.S.C. § 2201.**

WHEREFORE, defendants Jerry McGonigle and Georgia McGonigle join Section B(a) of plaintiff's prayer for a judicial declaration, but request the remainder of plaintiff's prayer be denied.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 22 of 46

## COUNTERCLAIM OF DEFENDANTS
## JERRY MCGONIGLE AND GEORGIA MCGONIGLE AGAINST
## <u>PLAINTIFF FIRST AMERICAN TITLE INSURANCE COMPANY</u>

1.      Defendants Jerry McGonigle and Georgia McGonigle (the McGonigles), husband and wife, are residents of Reno County, Kansas.

2.      Plaintiff First American Title Insurance Company (First American) is a California corporation authorized to do business in the state of Kansas.

3.      Jurisdiction for the McGonigles' counterclaims against First American arises under 18 U.S.C. § 1367.

## <u>COUNT I: BREACH OF CONTRACT</u>

4.      Paragraphs 1 through 3 are incorporated by reference as if fully restated herein.

5.      On October 30, 2008, at 10:30 a.m., in consideration for a premium paid at closing, First American issued Policy No. OPK 1015275 (the Title Policy) to the McGonigles.

6.      The Title Policy had an "Amount of Insurance" of $330,000.00.

7.      The Title Policy insured fee simple title to property commonly known as 3900 Lakeview Road, Hutchinson, KS 67502, to Jerry L. McGonigle and Georgia M. McGonigle, husband and wife, as joint tenants, subject to exclusions enumerated in the Title Policy.

8.      The "Covered Risks" of the Title Policy stated in part:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE IN SCHEDULE B AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY OF KANSAS, a Kansas corporation (the "Company") insures, as of the Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title.
3. Unmarketable Title.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 23 of 46

9.     On November 1, 1977, an Agreement was entered between the City of Hutchinson, Kansas; Bill Rowland; and June Rich (the 1977 Agreement).  It created rights and responsibilities for the maintenance of Panorama Dam, which rights and responsibilities applied to subsequent owners of the property.  The 1977 Agreement was recorded March 12, 1979, at 8:05 a.m., at Book 178, Page 114 of the Reno County Register of Deeds.

10.     On January 27, 1981, an Agreement was entered between the City of Hutchinson, Kansas; June Rich; Dan Rich; and Kathy Rich (the 1981 Agreement).  It superseded the 1977 Agreement; created rights and responsibilities for the maintenance of Panorama Dam; and applied these rights and responsibilities to subsequent owners of the property.  The 1981 Agreement was recorded February 10, 1981, at 3:10 p.m., at Book 186, Page 356 of the Reno County Register of Deeds.

11.     The Title Policy's "Exclusions from Coverage" did not exclude the 1977 Agreement or the 1981 Agreement.

12.     The Title Policy's "Exceptions from Coverage" in Schedule B did not mention the 1977 Agreement or the 1981 Agreement.

13.     The Title Policy did not otherwise mention the 1977 Agreement or the 1981 Agreement.

14.     Because the 1977 Agreement and the 1981 Agreement were not expressly excluded from coverage, they are included in the coverage of the Title Policy.

15.     The 1977 Agreement and the 1981 Agreement caused title to be "vested other than as stated in Schedule A" in the Title Policy.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 24 of 46

16.     The 1977 Agreement and the 1981 Agreement constitute a "defect in or lien or encumbrance on the Title" insured by the Title Policy.

17.     The 1977 Agreement and the 1981 Agreement render "unmarketable" the title to the property insured by the Title Policy.

18.     As required by the Title Policy, the McGonigles made written demand to First American for their losses.

19.     First American refused without just cause or excuse to pay the full amount of the McGonigles' loss under the Title Policy.

20.     The McGonigles have suffered and will continue to suffer losses covered under the Title Policy.

21.     First American's actions constitute breach of contract and a violation of K.S.A. 40-256.

WHEREFORE, as to Count I: Breach of Contract, the McGonigles request (1) entry of judgment against First American; (2) the full amount of their losses under the Title Policy, not to exceed $330,000; (3) for their costs, including attorney's fees pursuant to K.S.A. 40-256; and (4) for such other and further relief as this Court may deem just and equitable.

## COUNT II: FRAUD BY SILENCE

22.     Paragraphs 1 through 21 are incorporated by reference as if fully restated herein.

23.     Prior to closing, First American performed a title search of the property described in the Purchase Contract between the Riches and the McGonigles.

24.     The Title Commitment identified certain documents recorded with the Reno County Register of Deeds pertaining to the property.

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 25 of 46

25.    Upon information and belief, First American discovered the 1977 Agreement during its title search.

26.    First American did not notify the McGonigles or their real estate agent of the 1977 Agreement prior to closing.

27.    Upon information and belief, First American discovered the 1981 Agreement during its title search.

28.    First American did not notify the McGonigles or their real estate agent of the 1981 Agreement prior to closing.

29.    Had the McGonigles known of the 1977 Agreement or the 1981 Agreement prior to closing, they would not have purchased the property.

30.    The 1981 Agreement, which was recorded at Book 186, Page 356, appeared in the Reno County Register of Deeds just one page after a document First American did mention in the Title Policy, which document had been recorded at Book 186, Page 355.

31.    Prior to closing, First American had knowledge of the 1977 Agreement and the 1981 Agreement, which knowledge the McGonigles did not have and which the McGonigles could not have discovered by the exercise of reasonable diligence.

32.    The existence of the 1977 Agreement and the 1981 Agreement are material facts concerning the property conveyed by the Riches to the McGonigles.

33.    First American was under an obligation to communicate to the McGonigles its knowledge of the 1977 Agreement and the 1981 Agreement.

34.    First American intentionally failed to communicate to the McGonigles the existence of the 1977 Agreement and the 1981 Agreement.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 26 of 46

35.     The McGonigles justifiably relied on First American to disclose the existence of all recorded documents concerning the property at issue.

36.     The McGonigles have sustained damages as a result of First American's failure to disclose the existence of the 1977 Agreement and the 1981 Agreement.

WHEREFORE, as to Count II: Fraud by Silence, the McGonigles request (1) an entry of judgment against First American; (2) the full amount of their monetary damages sustained as a result of First American's actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

## COUNT III: FRAUD BY SILENCE

37.     Paragraphs 1 through 36 are incorporated by reference as if fully restated herein.

38.     On August 6, 2008, the McGonigles, as buyers, and the Riches, as sellers, entered into that certain Contract for Purchase and Sale of Real Estate (the Purchase Contract), for real property identified therein as "3900 Lakeview Road, Hutchinson, Reno County, Kansas".

39.     Paragraph 6 of the Purchase Contract further described the property as "the home and the 10 acres, but also to include the approximately 8.6 acres to the south of the home for approximately 18.6 acres."

40.     The legal description for one of the parcels described in Paragraph 6 of the Purchase Contract was stated in that certain Joint Tenancy Warranty Deed dated March 6, 1995, and recorded March 14, 1995, at 4:10 p.m., in Book 517, Page 81 of the Reno County Register of Deeds.

41.     The legal description for the other parcel described in Paragraph 6 of the Purchase Contract was stated in that certain Joint Tenancy Warranty Deed dated June 18, 1993, and

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 27 of 46

recorded June 21, 1993, at 11:20 a.m., in Book 507, Page 267 of the Reno County Register of Deeds.

42.     First American never provided a title commitment for these two parcels of land to the McGonigles.

43.     At some point before closing, defendants Dan M. Rich and Mary Beth Rich had Garber Surveying Service, P.A. (Garber Surveying) conduct a survey for the purpose of combining the two parcels.

44.     The Riches requested that Garber Surveying also remove approximately one acre of frontage property, which the Riches intended to keep and use for residential development.

45.     Garber Surveying completed the survey as requested and provided a new, single legal description in October 2008.

46.     On October 8, 2008 (the day before closing), third-party defendant Karen Gilliland provided a new legal description to First American, and had First American revise all of the closing documents to remove the previous two legal descriptions and replace them with the new legal description.

47.     Neither Gilliland nor First American notified the McGonigles of the revised legal description in the closing documents.

48.     The following day, October 9, 2008, the McGonigles attended closing and signed the closing documents prepared by First American, including that certain Kansas Warranty Deed, which was thereafter recorded October 30, 2008 in Book 601, Page 399 in the office of the Register of Deeds of Reno County, Kansas.

49.     The revised property description is a material fact concerning the property conveyed by the Riches to the McGonigles.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 28 of 46

50.     First American had knowledge of material facts which the McGonigles did not have and which the McGonigles could not have discovered by the exercise of reasonable diligence.

51.     First American was under an obligation to communicate to the McGonigles that the closing documents would include a revised property description provided by Karen Gilliland.

52.     First American intentionally failed to communicate to the McGonigles that the closing documents would include a revised property description provided by Karen Gilliland.

53.     The McGonigles justifiably relied on First American to disclose any changes to the property being conveyed at closing.

54.     The McGonigles have sustained damages as a result of First American's failure to disclose that the closing documents would include a revised property description provided by Karen Gilliland.

WHEREFORE, as to Count III: Fraud by Silence, the McGonigles request (1) an entry of judgment against First American; (2) the full amount of their monetary damages sustained as a result of First American's actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

## COUNT IV: FRAUDULENT MISREPRESENTATION

55.     Paragraphs 1 through 54 are incorporated by reference as if fully restated herein.

56.     Weeks later, Jerry McGonigle went to First American's office to request a copy of all the closing documents.   He was provided a packet of documents, including a Title Commitment dated August 8, 2008.

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 29 of 46

57.     The Title Commitment, dated August 8, 2008, contained the revised legal description which did not exist until October 2008.  This property description was stated in Schedule A, Paragraph 4 of the Title Commitment.

58.     Upon information and belief, the First American deliberately changed the August 8, 2008 Title Commitment to make it consistent with the other documents prepared by First American containing the revised legal description.

59.     First American's Title Commitment dated August 8, 2008, contained representations of existing and material fact as to the property subject to the Title Commitment on August 8, 2008.

60.     First American's representation that the property to be conveyed was represented in the single legal description was false, and was known by First American to be false.

61.     First American's act of inserting a legal description in the Title Commitment dated August 8, 2008 that did not exist on that date shows First American fraudulently misrepresented its previous actions so as not to cause suspicion by the McGonigles.

62.     The McGonigles reasonably relied and acted upon First American's Title Commitment to their detriment.

63.     The McGonigles have sustained damages by relying upon First American's false and fraudulent Title Commitment dated August 8, 2008.

WHEREFORE, as to Count IV: Fraud by Silence, the McGonigles request (1) an entry of judgment against First American; (2) the full amount of their monetary damages sustained as a result of First American's actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 30 of 46

## COUNT V: CIVIL CONSPIRACY

64.     Paragraphs 1 through 63 are incorporated by reference as if fully restated herein.

65.     Upon information and belief, defendants Dan M. Rich and Mary Beth Rich had been trying for several months to sell the property commonly known as 3900 Lakeview Drive, Hutchison, Kansas 67502.

66.     Upon information and belief, third-party defendant Karen Gilliland had been assisting defendants Dan M. Rich and Mary Beth Rich in their unsuccessful efforts to sell 3900 Lakeview Drive.

67.     Upon information and belief, a meeting of the minds occurred between First American; defendants Dan M. Rich, and Mary Beth; and third-party defendant Karen Gilliland to accomplish the sale of 3900 Lakeview Drive.

68.     In order accomplish this purpose, defendants the Riches, third-party defendant Gilliland, and First American deliberately failed to disclose the 1977 Agreement and the 1981 Agreement so the McGonigles would not know the nature or extent of the problems with Panorama Dam before closing.

69.     As a proximate result of the civil conspiracy between First American and defendants Dan M. Rich and Mary Beth Rich, and third-party defendant Karen Gilliland, the McGonigles have suffered and will continue to suffer damages.

WHEREFORE, as to Count V: Civil Conspiracy, the McGonigles request (1) an entry of judgment against First American; (2) for the full amount of their monetary damages sustained as a result of First American's actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 31 of 46

## COUNT VI: CIVIL CONSPIRACY

70.     Paragraphs 1 through 69 are incorporated by reference as if fully restated herein.

71.     Upon information and belief, a meeting of the minds occurred between First American;  defendants Dan M. Rich and Mary Beth Rich; and third-party defendant Karen Gilliland to remove from the property description approximately one acre of undeveloped frontage, which would be retained by defendants Dan M. Rich and Mary Beth Rich for residential development.

72.     In order to accomplish this purpose, First American revised all the closing documents the day before closing with a new property description provided by third-party defendant Karen Gilliland.

73.     First American did not notify the McGonigles or their real estate agent prior to or at closing of the revised property description.

74.     As a proximate result of the civil conspiracy between First American; defendants Dan M. Rich and Mary Beth Rich; and third-party defendant Karen Gilliland, the McGonigles have suffered and will continue to suffer damages.

WHEREFORE, as to Count VI: Civil Conspiracy, the McGonigles request (1) an entry of judgment against First American; (2) for the full amount of their monetary damages sustained as a result of First American's actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

## CROSS-CLAIM OF DEFENDANTS
## JERRY MCGONIGLE AND GEORGIA MCGONIGLE AGAINST
## DEFENDANTS DAN M. RICH AND MARY BETH RICH

1.     Defendants Jerry McGonigle and Georgia McGonigle (the McGonigles), husband and wife, are residents of Reno County, Kansas.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 32 of 46

2.      Defendants Dan M. Rich and Mary Beth Rich (the Riches), husband and wife, are residents of Reno County, Kansas.

3.      Jurisdiction for the McConigles' cross-claims against the Riches arises under 18 U.S.C. § 1367.

## COUNT I: BREACH OF CONTRACT

4.      Paragraphs 1 through 3 are incorporated by reference as if fully restated herein.

5.      On August 6, 2008, the McGonigles, as buyers, and the Riches, as sellers, entered into that certain Contract for Purchase and Sale of Real Estate (the Purchase Contract), for real property identified therein as "3900 Lakeview Road, Hutchinson, Reno County, Kansas".

6.      Paragraph 8 of the Purchase Contract incorporated by reference that certain Seller's Property Disclosure signed by the Riches on May 9, 2008 (the Property Disclosure).

7.      Paragraph 6 of the Purchase Contract further described the property as "the home and the 10 acres, but also to include the approximately 8.6 acres to the south of the home for approximately 18.6 acres."

8.      The legal description for one of the parcels described in Paragraph 6 of the Purchase Contract was stated in that certain Joint Tenancy Warranty Deed dated March 6, 1995, and recorded March 14, 1995, at 4:10 p.m., in Book 517, Page 81 of the Reno County Register of Deeds.

9.      The legal description for the other parcel described in Paragraph 6 of the Purchase Contract was stated in that certain Joint Tenancy Warranty Deed dated June 18, 1993, and recorded June 21, 1993, at 11:20 a.m., in Book 507, Page 267 of the Reno County Register of Deeds.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 33 of 46

10.     The Riches did not convey to the McGonigles the property identified in Paragraph 6 of the Purchase Contract.  They instead conveyed property identified by a revised legal description, which combined the two legal descriptions and removed approximately one acre of frontage property.

11.     The revised property description was not disclosed to the McGonigles at or before closing, and therefore was not the result of any mutual modification of the Purchase Contract.

12.     The Richs' conveyance of real property other than that stated in the Purchase Contract constitutes a breach of contract.

13.     As a result of the Richs' breach of contract, the McGonigles have suffered monetary damages and other harm.

WHEREFORE, as to Count I: Breach of Contract, the McGonigles request (1) an entry of judgment against the Riches; (2) for the approximately one acre of frontage to be conveyed to the McGonigles, or in the alternative for damages equal to the full market value of the frontage property; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

## COUNT II: BREACH OF CONTRACT

14.     Paragraphs 1 through 13 are incorporated by reference as if fully restated herein.

15.     In Paragraph 8 of the Purchase Contract, the Riches promised to convey "The real estate described herein, together with improvements attached hereto . . . with the following exceptions: PER SELLER'S DISCLOSURE".

16.     Directly above the Richs' signatures on the Property Disclosure was the following statement: "The information contained in this Disclosure Statement has been furnished by SELLER who certifies to the truth thereof to the best of SELLER'S belief and knowledge, as of

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 34 of 46

the date signed below.  Any substantive changes will be disclosed by SELLER to BUYER prior to closing."

17.     Under Section E—Infestations, in response to Question 4: "Have you ever had any treatment done to control general pests (flies, mosquitoes, silverfish, spiders, etc.) at this property?", the Riches checked "No."

18.     The Riches did not change this answer prior to closing.

19.     Upon information and belief, prior to conveying the property to the McGonigles the Riches had on several occasions had general pest control performed by Roberts Pest Control in Hutchinson, Kansas.

20.     Under Section F—Structural Conditions, in response to Question 4: "Does the roof leak?", the Riches checked "No."

21.     The Riches did not change this answer prior to closing.

22.     Upon information and belief, prior to conveying the property to the McGonigles the Riches had experienced several roof leaks.

23.     Under Section F—Structural Conditions, in response to Question 7: "Are there any structural problems with the property?", the Riches checked "No."

24.     The Riches did not change this answer prior to closing.

25.     Upon information and belief, prior to conveying the property to the McGonigles the Riches were aware of several issues that could reasonably be considered structural problems, including but not limited to the condition of Panorama Dam.

26.     Under Section G—Hazardous Conditions, in response to Question 8: "Are you aware of any of the following substances, materials, or products on the property which may be an environmental hazard: Mold?", the Riches checked "No."

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 35 of 46

27.     The Riches did not change this answer prior to closing.

28.     Upon information and belief, prior to conveying the property to the McGonigles the Riches were aware of the presence of mold in the residence.

29.     Under Section H—Title Disclosures, in response to Question 1: Are you aware of any of the following, which could affect the FREE and CLEAR transfer of ownership to the real property: Any features (walls, fences, driveways, etc.) which are shared in common w/ adjoining landowners who use or have responsibility for maintenance of this feature?, the Riches checked "No."

30.     The Riches did not change this answer prior to closing.

31.     Upon information and belief, prior to conveying the property to the McGonigles the Riches were aware that the property shared a driveway with the adjoining landowner.

32.     Under Section H—Title Disclosures, in response to Question 7: "Are you aware of any of the following, which could affect the FREE and CLEAR transfer of ownership to the real property: Any lot line disputes or other unusual claims against the real property?", the Riches checked "No."

33.     The Riches did not change this answer prior to closing.

34.     Upon information and belief, prior to conveying the property to the McGonigles the Riches were aware that Panorama Dam had not been maintained for decades and that both the State of Kansas and the City of Hutchinson had notified the Riches on multiple occasions in writing of necessary maintenance and repairs.

35.     Under Section H—Title Disclosures, in response to Question 12: "Are you aware of any of the following, which could affect the FREE and CLEAR transfer of ownership to the

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 36 of 46

real property: Any notices from any governmental or quasi-governmental agency affecting this real property?", the Riches checked "No."

36.     The Riches did not change this answer prior to closing.

37.     Upon information and belief, prior to conveying the property to the McGonigles the Riches were aware that Panorama Dam had not been maintained for decades and that both the State of Kansas and the City of Hutchinson had notified the Riches on multiple occasions in writing of necessary maintenance and repairs.

38.     Under Section I—Other Disclosures, in response to Question 8: "Are there any flooding, drainage and/or grading problems anywhere on the property?", the Riches checked "No."

39.     The Riches did not change this answer prior to closing.

40.     Upon information and belief, prior to conveying the property to the McGonigles the Riches were aware that Panorama Dam had not been maintained for decades and that both the State of Kansas and the City of Hutchinson had notified the Riches on multiple occasions in writing of necessary maintenance and repairs that were necessary.  The Riches had further been notified in writing that Panorama Dam constituted a high flooding hazard.

41.     The description and condition of the property conveyed at closing was materially different than the property represented by the Rich's individual and respective answers to questions on the Seller's Disclosure.

42.     The Richs' conveyance of property that was materially different in description and condition than that described in the Purchase Contract constitutes breach of contract.

WHEREFORE, as to Count II: Breach of Contract, the McGonigles request (1) an entry of judgment against the Riches; (2) for the full amount of sustained as a result of the Richs'

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 37 of 46

breach of the Purchase Contract; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

<u>**COUNT III: FRAUDULENT MISREPRESENTATION**</u>

43.     Paragraphs 1 through 42 are incorporated by reference as if fully restated herein.

44.     The Richs' statements in the Purchase Contract and Property Disclosure were individual and respective statements of existing and material fact.

45.     The Richs' representations of fact in the Purchase Contract and Property Disclosure were false.

46.     The Richs' representations in the Purchase Contract and Property Disclosure were known by the Riches to be false, or were recklessly made without knowledge concerning them.

47.     The Richs' representations in the Purchase Contract and Property Disclosure were intentionally made for the purpose of inducing the McGonigles to act upon them.

48.     The McGonigles reasonably relied and acted upon the Richs' representations in the Purchase Contract and Property Disclosure, in that they entered into the Purchase Contract and thereafter closed on the property.

49.     The McGonigles have sustained damages by relying upon Richs' representations in the Purchase Contract and Property Disclosure.

50.     Because the McGonigles were induced to enter into the Purchase Contract because of the false and fraudulent misrepresentations of the Riches, the McGonigles are entitled to a rescission of the Purchase Contract.

WHEREFORE, as to Count III: Fraudulent Misrepresentation, the McGonigles request (1) an entry of judgment against the Riches; (2) for rescission of the Purchase Contract; (3) in the alternative to rescission, for the full amount of damages as a result of the Richs' fraudulent

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 38 of 46

misrepresentations; (4) for the costs of this action; and (5) for such other and further relief as this Court may deem just and equitable.

## COUNT IV: FRAUD BY SILENCE

51.     Paragraphs 1 through 50 are incorporated by reference as if fully restated herein.

52.     With respect to the Richs' statements in the Purchase Contract and Property Disclosure, the Riches had knowledge of material facts which the McGonigles did not have and which the McGonigles could not have discovered by the exercise of reasonable diligence.

53.     The Riches were under an obligation to communicate these material facts to the McGonigles.

54.     The Riches intentionally failed to communicate these material facts to the McGonigles.

55.     The McGonigles justifiably relied on the Riches to disclose these material facts.

56.     The McGonigles have sustained damages as a result of the Richs' failure to disclose the existence of all material facts concerning the property.

WHEREFORE, as to Count IV: Fraud by Silence, the McGonigles request (1) an entry of judgment against the Riches; (2) for the full amount of damages sustained as a result of the Richs' actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

## COUNT V: CIVIL CONSPIRACY

57.     Paragraphs 1 through 56 are incorporated by reference as if fully restated herein.

58.     Upon information and belief, a meeting of the minds occurred between the Riches, plaintiff First American; and third-party defendant Karen Gilliland to remove from the

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 39 of 46

property description approximately one acre of frontage for the Riches to later use for residential development.

59.     In order to accomplish this purpose, the Richs retained Garber Surveying to prepare a new legal description that omitted the frontage property, and thereafter had the new property description provided to their agent, third-party defendant Karen Gilliland.

60.     The Riches did not tell the McGonigles of the survey they had performed or the revised legal description that was later inserted in the closing documents.

61.     The Riches thereafter contacted the City of Hutchinson, Kansas for the purpose of subdividing the approximately one acre.

62.     As a proximate result of the civil conspiracy between the Riches; plaintiff First American; and third-party defendants Karen Gilliland, the McGonigles have suffered and will continue to suffer damages.

WHEREFORE, as to Count V: Civil Conspiracy, the McGonigles request (1) an entry of judgment against the Riches; (2) for the full amount of damages sustained as a result of the Richs' actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

### THIRD PARTY CLAIM OF DEFENDANTS
### JERRY MCGONIGLE AND GEORGIA MCGONIGLE AGAINST
### ASTLE REALTY, INC. AND KAREN GILLILAND

1.     Defendants Jerry McGonigle and Georgia McGonigle (the McGonigles), husband and wife, are residents of Reno County, Kansas.

2.     Astle Realty, Inc. (Astle Realty) is a domestic, for-profit corporation with its principal place of business at 224 E. 30th Avenue, Hutchinson, Kansas 67502.  It may be served with process upon its registered agent, Judith L. McCool, at the same address.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 40 of 46

3.     Karen Gilliland (Gilliland) is an individual and resident of Reno County, Kansas. At all material times herein Gilliland was an "Owner-Broker" of defendant Astle Realty.  She may be served with process at her regular place of business, 224 E. 30th Avenue, Hutchinson, Kansas 67502.

4.     Jurisdiction for the McConigles' cross-claims against Astle Realty and Gilliland arises under 18 U.S.C. § 1367.

5.     Each and every action alleged herein against Gilliland was made in her capacity as "Owner-Broker" of Astle Realty.

6.     Each and every such action by Gilliland was either expressly authorized or ratified by Astle Realty.

## COUNT I: FRAUD BY SILENCE

7.     Paragraphs 1 through 6 are incorporated by reference as if fully restated herein.

8.     Gilliland served as the listing agent for the Riches in the transaction with the McGonigles.

9.     As part of her duties as listing agent, Gilliland reviewed the Purchase Contract.

10.     As part of her duties as listing agent, Gilliland reviewed the Seller's Property Disclosure Statement.

11.     Upon information and belief, Gilliland knew that some or all of the Richs' representations in the Purchase Contract and Property Disclosure were false, including but not limited to the property to be conveyed and the nature and extent of issues concerning Panorama Dam.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 41 of 46

12.     Upon information and belief, Gilliland knew or had reason to believe the McGonigles were unaware of the truth of these representations and could not have discovered the truth about these representations by the exercise of reasonable diligence.

13.     Gilliland had an obligation to disclose to the McGonigles all adverse material facts actually known by Gilliland, including but not limited to: environmental hazards affecting the property which are required by law to be disclosed; the physical condition of the property; any material defects in the property; any material defects in the title to the property; and any material limitation on the Richs' ability to perform under the terms of the contract.

14.     Gilliland intentionally failed to communicate to the McGonigles her knowledge of adverse material facts actually known by her.

15.     Gilliland intentionally refused to disclose information to the McGonigles, the failure of which would cause the Richs' statements in the Purchase Contract and Seller's Property Disclosure to be fraudulent misrepresentations.

16.     The McGonigles justifiably relied on the Gilliland to disclose the existence of all material facts concerning the property.

17.     The McGonigles have sustained damages as a result of the Gilliland's failure to disclose the existence of all material facts concerning the property.

WHEREFORE, as to Count I: Fraud by Silence, the McGonigles request (1) an entry of judgment against Gilliland and Astle Realty; (2) for the full amount of damages as a result of Gilliland's actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

## COUNT II: FRAUD BY SILENCE

18.     Paragraphs 1 through 17 are incorporated by reference as if fully restated herein.

*First American Title Insurance Company v. McGonigle, et al.*, Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 42 of 46

19.     Upon information and belief, Gilliland knew the Riches desired to change the property description before closing so the Riches could retain approximately one acre of frontage for residential development.

20.     Upon information and belief, Gilliland knew the Riches were obtaining a survey from Garber Surveying to combine the property descriptions and remove approximately one acre of frontage.

21.     Upon information and belief, the day before closing Gilliland presented the revised property description to plaintiff First American and instructed First American to insert the revised legal description in the closing documents.

22.     Upon information and belief, Gilliland knew the McGonigles were unaware of the revised property description, and could not have discovered the truth about this change by the exercise of reasonable diligence.

23.     Gilliland had an obligation to notify the McGonigles and/or their real estate agent of the revised property description.

24.     Gilliland intentionally failed to communicate to the McGonigles or their real estate agent the revised property description.

25.     The McGonigles justifiably relied on the Gilliland to disclose any property description changes before closing.

26.     The McGonigles have sustained damages as a result of the Gilliland's failure to disclose the revised property description in the closing documents.

27.     WHEREFORE, as to Count II: Fraud by Silence, the McGonigles request (1) an entry of judgment against Gilliland and Astle Realty; (2) for the full amount of damages

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 43 of 46

sustained as a result of Gilliland's actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as this Court may deem just and equitable.

## COUNT III: CIVIL CONSPIRACY

28.     Paragraphs 1 through 27 are incorporated by reference as if fully restated herein.

29.     Upon information and belief, a meeting of the minds occurred between Gilliland; defendants the Riches; and plaintiff First American to remove from the property description approximately one acre of frontage to be retained by the Riches for residential development.

30.     In order to accomplish this purpose, Gilliland presented plaintiff First American with a revised property description the day before closing without notifying the McGonigles or their real estate agent.

31.     Plaintiff First American and defendants the Riches intentionally withheld this information from the McGonigles.

32.     As a proximate result of the civil conspiracy between plaintiff First American and defendants Gilliland and the Riches, the McGonigles have suffered and will continue to suffer damages.

WHEREFORE, as to Count III: Civil Conspiracy, the McGonigles request (1) an entry of judgment against Gilliland and Astle Realty; (2) for the full amount of damages sustained as a result of Gilliland's actions in this Count; (3) for the costs of this action; and (4)for such other and further relief as this Court may deem just and equitable.

## COUNT IV: VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT

33.     Paragraphs 1 through 32 are incorporated by reference as if fully stated herein.

34.     Gilliland is a "supplier" as that term is used in the Kansas Consumer Protection Act (KCPA).

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 44 of 46

35.     The McGonigles are "consumers" as that term is used in the KCPA.

36.     The real estate transaction between the McGonigles and the Riches is a "consumer transaction" as that term is used in the KCPA.

37.     In the course of the real estate transaction between the McGonigles and the Riches, Gilliland willfully failed to state material facts and willfully concealed, suppressed or omitted material facts.

38.     Gilliland's actions constitute "deceptive acts and practices" in violation of the KCPA.

39.     As a result of Gilliland's violations of the KCPA, the McGonigles have suffered monetary damages and other harm.

WHEREFORE, as to Count IV: Violation of the Kansas Consumer Protection Act, the McGonigles request (1) an entry of judgment against Gilliland and Astle Realty; (2) for the full amount of damages sustained as a result of Gilliland's actions in this Count, or for civil penalties in accordance with the KCPA, whichever is greater; (3) for attorney's fees in accordance with the KCPA; (4) the costs of this action; and (5)for such other and further relief as this Court may deem just and equitable.

### THIRD PARTY CLAIM OF DEFENDANTS
### JERRY MCGONIGLE AND GEORGIA MCGONIGLE AGAINST
### <u>VORAN HOME INSPECTIONS, INC.</u>

### <u>COUNT I: BREACH OF CONTRACT</u>

1.     Defendants Jerry McGonigle and Georgia McGonigle (the McGonigles), husband and wife, are residents of Reno County, Kansas.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 45 of 46

2.      Voran Home Inspections, Inc. (Voran) is a domestic, for-profit corporation with its principal place of business at 1311 Hillcrest Road, Newton, Kansas 67114.  It may be served with process upon its owner, Brent Voran, at the same address.

3.      On August 13, 2008, the McGonigles and Voran entered into that certain Inspection Agreement for a home inspection of the residence at 3900 Lakeview Drive, Hutchinson, Kansas 67501.

4.      The Inspection Agreement provided that Voran would "perform a visual inspection of the house and provide [the McGonigles] with a written inspection report identifying the condition of the following systems and components."

5.      The Inspection Report further provided that "The inspection will be performed in accordance with the current Code of Ethics and Standards of Practice of the American Society of Home Inspectors (ASHI) . . . ."

6.      Voran thereafter inspected the home and prepared a Home Inspection Report dated August 13, 2008.

7.      Upon information and belief, Voran failed to perform the home inspection in accordance with the Inspection Agreement.

8.      As a result, Voran failed to correctly identify the true condition of the systems and components listed in the Inspection Agreement.

9.      Voran's actions constitute breach of contract.

10.     In reliance on Voran's Home Inspection Report, the McGonigles thereafter purchased the property commonly known as 3900 Lakeview Drive, Hutchinson, Kansas 67502.

11.     As a consequence of Voran's breach of contract, the McGonigles have suffered and will continue to suffer monetary damages.

*First American Title Insurance Company v. McGonigle, et al.,* Case No. 10-1273-MLB-KGG
Answer, Counterclaim, Cross-Claim and Third-Party Claim of Defendants Jerry and Georgia McGonigle
Page 46 of 46

WHEREFORE, as to Count I: Breach of Contract, the McGonigles request (1) an entry of

judgment against Voran; (2) for the full amount of damages sustained as a result of Voran's

actions in this Count; (3) for the costs of this action; and (4) for such other and further relief as

this Court may deem just and equitable.

RESPECTFULLY SUBMITTED,

JOSEPH & HOLLANDER, P.A.

By: _/s/ Edward L. Robinson_____
Edward L. Robinson, #22043
Michael A. Priddle, #18825
500 N. Market
Wichita, KS 67214
(316) 262-9393 Telephone
(316) 292-9006 Fax
(316) 204-3659 Mobile
erobinson@josephhollander.com
mpriddle@josephhollander.com
*Attorneys for Defendants Jerry McGonigle and Georgia McGonigle*