IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

FIRST AMERICAN TITLE INSURANCE )
COMPANY, )
                                )
                 Plaintiff,     )    **CIVIL ACTION**
                                )
v.                              )    No.  10-1273-MLB
                                )
JERRY MCGONIGLE, et al.,        )
                                )
                 Defendants.    )
                                )
                                )
JERRY AND GEORGIA MCGONIGLE,    )
                                )
                 Defendants/Third )
                 -Party Plaintiffs)
v.                              )
                                )
MARY RICH, et al.               )
                                )
                                )
                 Third Party    )
                 Defendants.    )
_____)


                    <u>MEMORANDUM AND ORDER</u>

     This case comes before the court on the following motions:

     1) First American's motion for summary judgment (Doc. 127),
memoranda in support (Docs. 128, 133), the McGonigles' response (Doc.
140) and First American's reply (Doc. 142); and

     2) Defendant City of Hutchinson' motion for summary judgment
(Doc. 130), First American's response (Doc. 135) and the McGonigles'
response (Doc. 139).

**I.   Facts and Procedural History**

     This case arose after the McGonigles purchased a home and the
surrounding acreage in Hutchinson, Kansas, in 2008 from Danny and Mary

Beth Rich.  The purchased land included the Panorama Dam.  In 1981, the Riches entered into an agreement with the City of Hutchinson concerning the duties of both the Riches and the City concerning the dam.  The agreement required the Riches to remove trees from close proximity to the dam, and to perform maintenance and repairs.  The City also had the right to inspect the dam and give notice of needed repairs.  In the event that the Riches did not make said repairs, the City could complete the repairs and bill the Riches.  This agreement was binding upon the parties and their assigns and was filed with the Register of Deeds.

In 1993, the Kansas Division of Water Resources (DWR) inspected the dam.  An inspection report was issued and noted that the dam was not being maintained.  There is no evidence that this report was submitted to the Riches.  A DWR team inspected the dam again in 1997.  The inspection report again noted that the dam was not being maintained.  DWR changed the dam classification to high hazard because it believed there was a potential for loss of life and/or significant property damage in the event of dam failure.  DWR sent a letter to Dan Rich in which it informed Rich that he was in violation of the permit issued in 1979.  DWR gave Rich 60 days to inform it of his plans to bring the dam into compliance.  Rich did not respond to DWR and DWR did not take any further action at that time.  The dam was inspected again in 1999.  DWR issued another letter to the Riches and required that they take action.  DWR also submitted a proposed Consent Order to the Riches.  The Riches did not respond and DWR did not take any action.

In 1999, a title insurance policy was issued by First American

-2-

to the Riches. The policy did not include the 1981 agreement. On October 30, 2008, First American issued a title policy to the McGonigles for the property. The policy did not except from coverage the 1981 agreement. At some point after the sale closed, the McGonigles learned of the 1981 agreement.

On January 8, 2009, a meeting was held at Panorama Dam with the McGonigles and representatives for the City and DWR. The McGonigles were told that the maintenance of the dam was their responsibility and DWR expressed several concerns about the dam and suggested several repairs. On December 4, 2009, the McGonigles received an estimate for the repairs to the dam. The estimate was approximately $850,000.[1] The McGonigles sent a demand letter to First American, seeking coverage under the title commitment. First American denied the claim and filed this action seeking a declaratory judgment that it has no duty to defend or honor the McGonigles' claim.

The McGonigles filed a counter claim against First American alleging breach of contract, and cross claims against the Riches, Aste Realty, Karen Gilliland and Terry Brigman. The McGonigles amended their complaint on two additional occasions. (Docs. 54, 88). The City filed an answer and cross claim against the McGonigles and the Riches, seeking specific performance. The parties submitted a proposed pretrial order to the court in December 2012. The proposed pretrial order states that First American breached its contract with the McGonigles because it failed to discover the 1981 Agreement. The McGonigles contend that the 1981 Agreement is a covered risk and

---

[1] A more recent estimate puts the repairs at more than $500,000.

-3-

sought damages due to their expenses in complying with the agreement.

On January 11, 2013, the City moved for summary judgment on the basis that the 1981 agreement was unenforceable. (Doc. 130). All parties, including the McGonigles, agree with the City's position and the motion is uncontested. (Docs. 135, 139). On March 1, 2013, the court sent the parties a letter seeking to clarify the McGonigles' claims against First American in light of the City of Hutchinson's uncontested motion for summary judgment. (Doc. 144). The McGonigles' contend that their breach of contract claim is based on 1) the property has unmarketable title; 2) a defect, lien or encumbrance; or 3) suffers from an existing violation of laws or regulations.

### Policy Language

The policy states as follows with respect to the covered risks cited by the McGonigles:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY OF KANSAS, a Kansas corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss of damage, not exceeding the Amount of Insurance sustained or incurred by the Insured by reason of:

> * * *

> 2. Any defect in or lien or encumbrance on the Title. . .

> 3. Unmarketable Title.

> * * *

> 5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

>> (a) the occupancy, use, or enjoyment of the Land;
>> (b) the character, dimensions, or location of any

-4-

improvement erected on the Land;
    (c) The subdivision of land; or
    (d) environmental protection

    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

(Doc. 128, exh. 40 at 1).

    The policy states as follows with respect to the exclusions First American contends are applicable:

    EXCLUSIONS FROM COVERAGE

    The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

    1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i) the occupancy, use, or enjoyment of the Land . . .
    or the effect of any violation of these laws, ordinances, or governmental regulations.

    * * *

    3. Defects, liens, encumbrances, adverse claims, or other matters . . .
    (c) resulting in no loss or damage to the Insured Claimant . . .

    * * *

    LIMITATION OF LIABILITY
    (a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as Insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(Doc. 128, exh. 40 at 2-3).

## II.    Summary Judgment Standard

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim.  Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III.   Analysis

### A.  City of Hutchinson's Motion for Summary Judgment (Doc. 130)

The City of Hutchinson moves for summary judgment against itself.  The City asserted claims against the McGonigles and the Riches seeking specific performance of the 1981 Agreement.  In its motion, the City contends that the dam is under the exclusive jurisdiction of the DWR citing K.S.A. 82a-301a.  Section 82a-301a states that "all dams . . . are declared to be under the jurisdiction

-6-

of [DWR]." Therefore, the City cannot enter an agreement concerning the dam. All parties agree and the motion is uncontested.

The City's motion is granted. (Doc. 130)

**B. First American's Motion for Summary Judgment (Doc. 127)**

First American moves for summary judgment on the McGonigles' claim for breach of contract. The McGonigles contend that their claim is based on three covered risks set forth in the policy. (Doc. 156) The court will address each risk in turn. The court will then turn to First American's argument concerning exclusions to covered risks.

**1. Covered Risk 5 - Current Violations of Laws and Regulations**

The McGonigles assert that covered risk 5 is applicable because DWR requires that the dam be repaired to comply with Kansas law. First American contends that this covered risk is not applicable because the alleged violations of Kansas law were not recorded. First American is correct. The policy clearly states that a notice must be recorded in the public records in order for the risk to be covered under the policy.

Therefore, First American's motion for summary judgment on this issue is granted.

**2. Covered Risk 2 - Defect, Lien or Encumbrance on the Title**

Next, the McGonigles contend that covered risk 2 is applicable because the dam is a defect, lien or encumbrance on the title. The McGonigles first argue that the 1981 Agreement "by itself or as evidence of Panorama Dam" is an encumbrance and/or defect. (Doc. 140 at 21). The McGonigles cite only to Black's Dictionary in support of their position. The 1981 agreement is unenforceable. Therefore, it cannot be an be an encumbrance on the title.

-7-

The McGonigles further assert that the 1981 Agreement should have been disclosed because it is evidence of the dam's presence and the fact that it is regulated.  Presumably, the McGonigles were aware of the dam as it was located on the property they were purchasing. If they weren't, they should have been.  There is no support for the position that it was First American's responsibility to point out that there was a dam on the property nor is there support for the contention that First American had a duty to inform the McGonigles of all laws and regulations pertaining to the use of their property.

Therefore, First American's motion for summary judgment on this issue is granted.

### 3. Covered Risk 3 - Unmarketable Title

Finally, the McGonigles contend that the title to their property is unmarketable because it exposes them to litigation.  Kansas law holds that a title is unmarketable if there is "doubt or uncertainty sufficient to form the basis of litigation."  J & S Bldg. Co., Inc. v. Columbian Title & Trust Co., 1 Kan. App.2d 228, 240 (1977)(quoting Williams v. Bricker, 83 Kan. 53, 55 (1910)).

First American does not assert that the title to the McGonigle's property is marketable.  Rather, First American contends that exclusion 1, which precludes coverage for damages which arise by reason of any law, "exempts from coverage under the Title Policy conditions affecting the property which otherwise would render the title 'unmarketable.'" (Doc. 157 at 3).  The covered risks do except from coverage all exceptions and exclusions set forth in the policy. The McGonigles respond that the exclusion is not applicable because

it is for future violations of Kansas law, not existing violations.[2]

The court now turns to the language in the exclusion.  The exclusion states, in pertinent part, that "the Company will not pay loss or damage . . . that arise by reason of: 1. (a) Any law . . . or governmental regulation . . . restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; . . . or the effect of any violation of these laws, ordinances, or governmental regulations." (Doc. 128, exh. 40 at 2-3). The exclusion goes on to say that it does not modify or limit the coverage set forth in covered risk 5.  As discussed supra, covered risk 5 pertains to a recorded notice of violations.

The McGonigles contend that the language in covered risk 5 applies to current violations and the language in exclusion 1 is only applicable to future violations.  The McGonigles, however, state no authority for this proposition and fail to point to any language in the provision which would support a finding that exclusion 1 is limited to future violations.  The court finds that the language in exclusion 1 applies to violations of Kansas law that were present, but not recorded, on the date the policy went into effect.

There is no dispute that the dam was and is in violation of Kansas regulations at the time the policy was issued and DWR seeks a resolution.  Kansas law provides that the chief engineer of DWR "shall

---

[2] In their initial response, the McGonigles argued that this exclusion only pertained to zoning regulations. (Doc. 140 at 15-16). The language in the policy, however, clearly applies to any law relating to the use or enjoyment of the Land. The exclusion is not limited to zoning regulations.

have the power and duty to inspect any dam." K.S.A. 82a-303b(a)(1). If the chief engineer determines that a dam is in violation of any regulations, he or she shall order the correction of the violation or condition by the owner. K.S.A. 82a-303c(a). The McGonigles continue to argue that their damages are the costs to repair the dam which have yet to be incurred but are estimated at more than $500,000.

Because the McGonigles seek damages for repairs to the dam due to a violation of Kansas law or regulation, the court finds that the clear language of the policy set forth in exclusion 1 precludes the damages sought by the McGonigles.

## IV.    Conclusion

First American's motion for summary judgment is granted. (Doc. 127). Defendant City of Hutchinson's motion for summary judgment is granted. (Doc. 130).

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.


IT IS SO ORDERED.

Dated this    14th    day of March 2013, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-10-